William Cameron & Co. v. The First National Bank of
Decatur et al.

No. 63.

1. **National Bank as Member of a Partnership.**—Where a national bank joins as a partner with certain persons in forming a joint stock company to operate a mill, it can not be denied a recovery of moneys loaned to the company, on the ground that it had no power to become a partner in such milling business.

2. **Evidence—Auditor's Report.**—An auditor's report should contain a statement of the several items of debit and credit allowed, and not merely the total sums; but where no objection is made on this ground, and the report is good against the exceptions that are urged, it is conclusive of the matters within its scope, and renders immaterial alleged errors in admitting and rejecting evidence bearing on these matters.

3. **Agency—Liability where Officer of one Company is Manager of Another.**—Where the vice-president and manager of a bank is also manager of a partnership of which the bank is a member, his mismanagement of the partnership business is not chargeable to the bank, since in that business he does not act as agent of the bank.

4. **Joint Stock Company — Limitation of Power to Borrow Money.**—Where the articles of association of an unchartered joint stock company, of which a bank is a member, provide that the board of directors alone shall have power to contract debts against the concern, the other members are not liable to the bank, the business having proved a failure, for moneys advanced by the bank on the order of the company's manager, without authority of its directors.

Appeal from Wise.     Tried below before Hon. J. W. Patterson.

*J. H. Cobb,* for appellants.—1. A contract of a corporation that is ultra vires in the sense that it is entirely foreign to the purposes for which the corporation was organized, is void, and can not be enforced or form the basis of any right, even after performance.     The contract in this case

was void, because the plaintiff is a national bank and had no power to engage as a partner in the milling business. 1 Mora. on Corp., sec. 421; Whittenden Mills v. Upton, 10 Gray, 582; 71 Am. Dec., 681; Ball on Nat. Banks, 49–51; Weckler v. Bank, 42 N. Y., 581; Railway v. Morris, 67 Texas, 692; 1 Water. on Corp., sec. 161.

2. The court.erred in overruling the exceptions to the auditor's report, and in holding it to be conclusive upon all matters embraced therein. Whitehead v. Perie, 15 Texas, 7.

3. Where loss is caused to a partnership by the willful negligence and mismanagement of one of the members of the partnership, the loss must be borne by the guilty partner. 2 Lind. on Part., Ewell's ed., 784; 2 Bates on Part., sec. 761.

4. Power given to an agent to draw checks will be strictly construed. Authority by the board of directors to draw on the principal's funds will not empower the agent to draw on the principal's credit; authority to draw checks on a bank for property purchased by the agent implies no power to borrow money. Mech. on Agency, secs. 390, 393.

*Carswell, Fuller & Terrell*, for appellees.—1. The operation of the mill being incidental to and necessary to the transaction of the bank's business, the contract of partnership was not void. The contract was fully ·executed so far as the bank was concerned, and the mill company, of which appellants were partners, had received the benefits of such performance. Railway v. Robards, 60 Texas, 551.

2. The report of the auditor was conclusive of all matters found in it and not specially excepted to. Barkley v. Tarrant County, 53 Texas, 251; Kendall v. Hackworth, 66 Texas, 499.

STEPHENS, ASSOCIATE JUSTICE.—The parties to this appeal being co-owners of a certain mill at Decatur, Texas, on the 25th day of May, 1888, formed a joint stock company to operate the mill for one year from that date, under the firm name of the Decatur Roller Mill Company. The partnership agreement lodged the management of the business in a board of directors, consisting of the following four members: Henry Greathouse, who was also vice-president and general manager of appellee bank; D. Waggoner, president of said bank; George W. Trenchard, and C. More. The power to borrow money and create debts against the concern, with the restriction that the rate of interest should not exceed 12 per cent per annum, was lodged exclusively in this board of directors.

Greathouse was made treasurer and Waggoner president of the mill company. The plant was valued at $10,000, but there were no other assets, and in order to operate it the board of directors met and determined to borrow $2000 of appellee bank, which was accordingly done, and the amount evidenced by the promissory notes of the mill company.

Upon these notes, or renewals thereof, and an open account for moneys afterwards advanced by said bank in the nature of loans to cover overdrafts drawn by certain officers of the mill company, this suit was instituted by appellee bank against the several stockholders, to recover from them the pro rata parts of the alleged debt, the mill venture having proven a failure. The bank recovered the amount both of the original loan and of the overdrafts, from which judgment Cameron & Co. alone appeal.

About the 1st of December, 1888, Trenchard moved to a distant part of the State, and had no further connection with the board, and soon thereafter More dropped out and ceased to act as a director, having been deprived of the position of service assigned him in the beginning at the mill, to-wit, grain buyer, which left the management entirely in the hands of Greathouse, then general manager still of the bank, and Waggoner, president of the bank, who acquiesced in the management of Greathouse. During this time the mill was supplied with money by the bank to buy grain and pay operating expenses, as shown by the overdrafts of the officers of the mill company, upon which recovery was in part had, without any affirmative action on the part of the board of directors in relation thereto. The mill deposits were all kept at the bank, and interest at the rate of 1 per cent per month was charged on these overdrafts.

One Dwyer, as part owner of the mill, was made a defendant, in order to have partition of the real estate, but as he did not sign the partnership contract, no recovery was sought against him, and he was not included in the appeal.

*Opinion.*—1. Appellants' first defense, that a national bank is without power to become a partner in the milling business, was properly held inapplicable in this case. The bank certainly had the power to lend money, and this suit was brought to recover in the capacity of creditor, and not as a partner to recover a share of the profits, of which there were none. Other reasons might be assigned for the insufficiency of the ultra vires defense in this case. This disposes of the first assignment of error.

2. The exceptions to the auditor's report were properly overruled. The report should have contained a statement of the several items of debit and credit allowed, and not merely the total sums, but no objection was taken to it on this ground. The report being good against the exceptions urged, was conclusive of the matters within its scope, and rendered immaterial the alleged errors in admitting and rejecting evidence bearing upon those matters. This conclusion disposes of the third, fourth, and seventh assignments of error. The seventh is also bad, because the bill of exceptions does not show what the testimony excluded would have been.

3. All the other assignments, except the eleventh, relate to an immaterial issue, that of the alleged gross negligence of the bank in operating the mill. The evidence failed to develop such an issue. The fact that Greathouse was the common agent of the bank and the mill did not make his acts in operating the mill the acts of the bank. The bank, as such, had no more to do with the operations of the mill than any other member of the joint stock company; and if Greathouse was guilty of negligence of which appellants can complain, it was as agent of their own selection, and not as agent of the bank. The authority cited by appellants in support of their position, if applicable here, is against their contention, to-wit, 2 Bates on Partnership, page 809, at bottom, where the rule is thus. stated: "Where a firm is a member of another firm, negligence of one of its partners in his capacity of agent of the larger firm, and mismanagement, is not chargeable to the other members of the former firm."

4. The eleventh assignment raises the question, whether appellants are liable to the bank for their pro rata part of the alleged debt of the mill company arising out of the payments by the bank of the overdrafts made by the officers of the mill company after Trenchard and More ceased to act with the other two directors. That which distinguishes a corporation from an unchartered joint stock company is the difference in the extent of liability of the shareholders for the debts of the concern; in the latter, the liability being that of a partner in an ordinary partnership. In other respects, joint stock companies are analogous to corporations.. 11 Am. and Eng. Encycl. of Law, 1039; 1 Bates on Part., chap. 111,. sec. 72.

Upon this subject Mr. Bates, in the section above cited, says: "If the concern is composed of numerous members, and is governed by managers, there is no implied power in the other members to act. And if the managers are to act as a board, the individual assent of each is, as in the case of directors of a corporation, not equivalent to the act of the board.'" Tayl. on Priv. Corp., secs. 258, 259.

The analogy between a corporation and a joint stock company in their methods of operation being so close, it would seem to be but a reasonable construction of the articles of association in question to hold that the several parties thereto intended to confer upon the directors named the power to act only as the directors of a corporation would be empowered to act under like circumstances. Such seems to have been the practical construction given the contract at the time, as manifested by the prompt meeting and action of the directors as a board. By these articles they were "empowered to borrow money on the faith and credit of said business and property;" and lest there should be any misapprehension on this subject, it was further expressly provided, "The board of directors alone shall have power to contract debts against the concern." Of these limitations the bank had notice. That a considerable part of the debt.

sued upon and recovered was created without any action of the board of directors authorizing or ratifying it, seems clear from the record. Of this the bank must have had notice, because it was its own manager who both paid and drew the overdrafts, or authorized the same to be done. He acted for both concerns at the same time, with full knowledge of the situation.

The admitted fact that appellants acquiesced in the nonaction of Trenchard did not deprive them of the right to insist that the other three members should act jointly as a board, or at least concur without acting as a board, in creating a debt against the concern for which they should be held personally liable; it being expressly stipulated in the contract, to which the bank was a party, that only the board of directors could create such a debt. The shareholders but exercised prudence in thus guarding expressly against personal liability for unauthorized debts; and where no profit has been derived from the venture, there is nothing inequitable in any one or more of them insisting upon his rights under the contract as against another party thereto. The written instrument was the power of attorney under which the debt was created, and empowered its creation only by a majority of a quorum of the directors acting together as a board, or at most by a concurrence of a majority of the whole without action as a board. We are therefore of opinion, that the charge complained of in this assignment was misleading and damaging to appellants, and that the judgment must be reversed for that reason. We are also of opinion, that these conclusions, if correct, practically settle the issues involved, which seem to have been fully developed on the trial below, without any material conflict in the evidence; but the cause must be remanded for a new trial in accordance with this opinion.

If interest at a greater rate than 12 per cent per annum was recovered, as seems probable, it was not justified under the contract.

*Reversed and remanded.*

Delivered October 4, 1893.