**WINEINGER v. FARMERS' & STOCKMEN'S LOAN & INVESTMENT ASS'N et al.***
(No. 2554.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 25, 1925. Rehearing Denied Jan. 6, 1926.)

1. **Appeal and error ⬅854(3)—Judgment sustaining general demurrer must be upheld, if upon any proper theory.**

Judgment of trial court sustaining general demurrer to plaintiff's petition must be upheld, if upon any proper theory court's action was warranted.

2. **Pleading ⬅312—Articles of association, attached and made part of plaintiff's petition, controlling in case of conflict with allegations of fact in petition.**

In suit to recover from association money exchanged for "full-paid preferred stock," defendant's articles of association, attached to petition and made an exhibit, were properly considered in passing on demurrer, and controlled in case legal effect thereof conflicted with allegations of fact in petition.

3. **Joint-stock companies and business trusts ⬅19—Article of association properly considered by court as tending to show plaintiff had no cause of action against association.**

In suit against business trust to recover money paid for "full-paid preferred stock," which plaintiff alleged to be a loan, held that, if plaintiff's relation to the organization were such that she would be bound by articles of agreement, such articles could be properly considered as tending to show plaintiff had no cause of action.

4. **Joint-stock companies and business trusts ⬅15(1)—Member of business trust liable to third parties as partners, unless relieved by express contract with creditors.**

Where two or more parties engage in business enterprise in the form of a trust agree-

ment, articles of association, or declaration of trust, all members are liable to third parties as partners, unless relieved from such liability by express contract with creditors.

5. **Joint-stock companies and ·business trusts ⬅10—Holder of "full-paid preferred stock" certificates a member, and not creditor, of business trust.**

Where plaintiff advanced money to business trust for certificates of "full-paid preferred stock," which recited plaintiff was owner and holder of full-paid shares, held, plaintiff was a member, and not creditor, and her position was not altered because certificates provided only for interest on shares and no participation in profits; such provisions, together with cancellation and security features, merely giving her position of preferred shareholder.

6. **Joint-stock companies and business trusts ⬅10—Rules governing rights of stockholders in incorporated companies apply as far as equitable to stockholders in joint-stock associations.**

The rules governing the rights of stockholders in incorporated companies are applied as far as possible in determining the rights of the holders of stock in a joint-stock association.

7. **Joint-stock companies and business trusts ⬅10—Provision that holders of preferred stock not entitled to vote immaterial in ·determining plaintiff's relation to company as member or creditor.**

In determining plaintiff's relation to defendant business trust in a suit to recover money exchanged for certificates of "full-paid preferred stock," where plaintiff contended she was creditor, and not member, that declaration of trust provided holders of preferred stock are not entitled to vote was immaterial in determining her rights.

8. **Partnership ⬅79—Valid contract may be made, where even one partner would have management of business to exclusion of all others.**

Even in the case of a pure partnership, a valid contract might be made, where even one partner would have the management of the business to the exclusion of all others.

9. **Joint-stock companies and business trusts ⬅6—Petition alleging misrepresentations as to amount of stock sold and paid in sufficient.**

In action for rescission of contract of membership in joint-stock association or business trust on the grounds of fraud, held, that petition alleging misrepresentations as to amount of common stock that had been sold and fully paid in was sufficient.

10. **Joint-stock companies and business trusts ⬅6—In action to rescind contract for purchase of shares in joint-stock association or business trust, accounting and dissolution not required.**

In an action by plaintiff to rescind contract for purchase of full-paid preferred stock in joint-stock associations or business trust, held, an accounting and dissolution was not required.

<hr>

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error granted February 24, 1926.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by Mrs. Ida E. Wineinger against the Farmers' & Stockmen's Loan & Investment Association and others. From a judgment of dismissal, plaintiff appeals. Judgment affirmed in part, and in part reversed and remanded.

F. A. Cooper, of Amarillo, for appellant.

Underwood, Jackson & Johnson, of Amarillo, for appellees Farmers' & Stockmen's Loan & Investment Ass'n, Carlander, Lahm, and Snell.

Madden, Adkins & Pipkin and J. W. Crudgington, all of Amarillo, for appellees Nunn, Bush, Nash, Oliver, and Caldwell.

HALL, C. J. This suit was filed by appellant against the appellee association alleged to be unincorporated and R. M. Nash, G. A. Carlander, C. M. Humphrys, J. A. Bush, G. T. Oliver, L. S. Lahm, G. C. Snell, Tom B. Holman, J. L. Nunn, E. A. Caldwell, and W. P. Martin, to recover judgment for the amount which plaintiff alleges she paid to the association in exchange for what is styled on its face "Preferred Stock" in such association. She admits a credit by way of refund upon the amount due her.

By the first count of her first amended original petition she seeks to recover against the defendants on the theory that Farmers' & Stockmen's Loan & Investment Association is a partnership composed of the holders of the "common stock" in such association, and that the plaintiff was a general creditor of such partnership, and that each and all of the members of the association, she alleges, were jointly and severally liable. In the second count she seeks recovery upon the theory that, if she was a member of such partnership, she was induced to become such by the fraud of the defendants, and prays for a rescission and cancellation of the contract of partnership, and that she have judgment for the remainder of the sum invested by her. By the third count she seeks to recover upon a guaranty made by the agents of the defendants that her money would be refunded to her. The fourth count is one for money had and received.

The court sustained a general demurrer to her amended petition as a whole, and a general demurrer to each of the four counts contained therein, and, upon her refusal to amend, judgment was rendered dismissing her suit as to all defendants.

She alleges that on or about September 22, 1922, at the instance and request of defendants, she loaned them the sum of $1,000; that on March 17, 1922, she loaned them $1,000 additional; that on July 12, 1923, she loaned them $100; that, as evidence of said loans, the defendants executed and delivered to her twelve written instruments, one of which was delivered at the time of the first loan, and ten of which were delivered at the time of the second loan. The first of said instruments is in words and figures as follows:

"United States of America.

"No. 109.    Full-Paid Preferred Stock $1,000.

"Farmers' & Stockmen's Loan & Investment Association, Amarillo, Texas.

"This is to certify that Mrs. Ida E. Wineinger is the owner and holder of ten full-paid shares of the capital stock of the Farmers' & Stockmen's Loan & Investment Association, for each of which shares said stockholder has paid to the association the sum of one hundred dollars.

"The holder of this stock is not entitled to participate in the profits of the association, but shall be paid interest upon one hundred dollars for each share represented by this certificate, at the rate of 8 per cent. per annum, payable semiannually on the 1st days of January and July of each year, according to the terms of the interest coupons hereto attached, and as set forth in the articles of association, the declaration of trust, and the by-laws of said association.

"This certificate may be surrendered for cancellation by the holder, or called in for cancellation by the association at any time. after date, upon thirty days' notice thereof; and, upon such cancellation, the holder hereof shall receive from said association for each share canceled the sum of one hundred dollars, with interest at the aforesaid rate to the date of cancellation.

"The holder of this certificate will be entitled to borrow from the association up to 90 per cent. of the face value of the stock represented herein, giving this certificate as collateral security therefor.

"In witness whereof, the Farmers' & Stockmen's Loan & Investment Association has caused this certificate to be issued and signed by its president and secretary with the seal of the association affixed hereto, at Amarillo, Texas, this 22d day of September, A. D. 1922.

"F. R. Jamison, President.
"R. M. Nash, Secretary.
"[Seal of Farmers' & Stockmen's Loan & Investment Association.]"

To which certificate were attached 20 coupons, numbered 1 to 20, consecutively; No. 20 reading as follows:

"No. 20.

"On July 1, 1932 $40. The Farmers' & Stockmen's Loan & Investment Association of Amarillo, Texas, will pay to the bearer of this coupon forty dollars being the interest due at said date on full-paid preferred stock of said association certificate No. 109.

"R. M. Nash, Secretary.
"F. R. Jamison, President,"

—the other 19 being identical with No. 20, except as to date of payment, one maturing on the 1st day of July and January of each year, beginning with January 1, 1923, and No. 1 being for interest only from September 22, 1922, to January 1, 1923.

She further alleges that 11 other certificates of preferred stock were issued to her upon the dates mentioned above, which are substantially identical with the one set out,

except that they are for $100 each; that, while such instruments may be in the form of certificates of preferred stock in the association, plaintiff alleges that they are promissory notes and unqualified obligations on the part of the defendants to pay the several amounts of money named therein, with interest at the specified rate; that more than 30 days before the filing of this suit she demanded of the defendant association the sum of $2,100 so loaned and represented by the above-described certificates; that none of said amount has been paid, except $500 refunded to her November 19, 1923, and credited on the first loan of $1,000; that all interest has been paid up to January 1, 1924; that, while the defendant association was organized under a written instrument denominated "Articles of Association and Declaration of Trust," a copy of which is attached to the petition and made a part thereof, said association is a partnership composed of the holders of the common stock therein; that the individual defendants are the holders and owners of such common stock and are, therefore, partners in the undertaking; that under the articles of association and under the certificates issued to her she was not, and is not, permitted to participate in the control of such partnership association, nor share in the profits thereof, if any, and she is, therefore, as to the holders of such common stock, a general creditor of the partnership.

The substance of the second count is that if the association is a partnership, and the court finds that plaintiff is a member thereof, then she alleges that she was induced to enter into such partnership by the false and fraudulent representations of the defendant's agents, who were also at that time members of the partnership in this, that they represented to plaintiff that she was merely making a loan to such association by advancing to it money in exchange for the certificates of stock described in the first count of this petition, and that plaintiff would be repaid at any time she demanded it, with 8 per cent. interest from the time she made the loan to the association; that the common stock of the association amounted to $100,000 and was fully paid in cash or its equivalent; that such false and fraudulent representations were relied upon by plaintiff, and she was induced thereby to pay over to the association the said sum of $2,100.

By the third count of her petition, she alleges that, at the time the association acquired her money, the individuals named as defendants were in control of, and were managing, the affairs of the association, and as such defendants, through R. M. Nash and Fred N. Stinson, guaranteed that the money she was loaning such association would be repaid to her upon the surrender at any time for cancellation the certificates of stock which were issued to her.

The fourth count is in the nature of an action for money had and received. She alleges that she had no notice or knowledge of the existence of the articles of the association or its by-laws, nor of the contents of such instruments, and that they are pleaded for the limited purpose of showing that the defendants were partners; that the contracts made with her were authorized, and that she was and is not entitled to the ownership or control of the property of the association; that she had nothing to do with the preparation of the articles of the association, the by-laws, or the certificates delivered to her, but that they were prepared by the defendants; that it was not the intention of the plaintiff and defendants to enter into partnership relations, but by the transactions hereinabove set out it was mutually intended that the relation of debtor and creditor should exist between them.

[1, 2] Since the court sustained a general demurrer to the plaintiff's petition, the judgment must be affirmed if, upon any proper theory, the court was warranted in doing so. In passing upon the sufficiency of the petition as against the general demurrer, it was proper for the court to look to and consider the articles of association as a whole, a copy of which plaintiff had attached to and made an exhibit to her petition, and, if the legal effect of the exhibit in any of its provisions conflicts with the allegations of fact in the petition, the exhibit will control in determining the sufficiency of the petition. Abilene Independent T. & T. Co. v. Southwestern T. & T. Co. (Tex. Civ. App.) 185 S. W. 356; Rowles v. Hadden (Tex. Civ. App.) 210 S. W. 251; Cockrell v. Houston Banking Co. (Tex. Civ. App.) 133 S. W. 697; Texas & St. Louis Ry. Co. v. Ross, 62 Tex. 447; Petri v. Neimeyer (Tex. Civ. App.) 26 S. W. 266; Freiberg, Klein & Co. v. Magale, 70 Tex. 116, 7 S. W. 684; Lester v. New York Life Ins. Co., 84 Tex. 87, 19 S. W. 356.

[3, 4] If the relation of plaintiff to the organization is such that she will be bound by the provisions of the articles of agreement, it is proper for this court to consider such of them, if any, as would tend to show that she has no cause of action. It seems to be well settled in Texas that when two or more parties engage in a business enterprise under what is variously called a trust agreement, articles of association, or declaration of trust, all of the members of such association are liable to third parties under the general law of partnership, unless relieved from such liability by express contract with their creditors. Thompson v. Schmitt (Tex. Sup.) 274 S. W. 554; Victor Refining Co. v. City National Bank of Commerce (Tex. Sup.) 274 S. W. 561; Hollister v. McCamey (Tex. Sup.) 274 S. W. 562; Howe et al. v. Keystone Pipe & Supply Co., Limited (Tex. Sup.) 274 S. W. 563.

[5] Is the plaintiff correct in her conten-

tion that she is a creditor and not a party to the trust agreement, nor a partner, and that her evidences of the debt are not to be construed in connection with the trust agreement? Upon the face of each of the certificates issued to her appears these words: "Full-Paid Preferred Stock." The certificate, copied above, recites:

"This is to certify that Mrs. Ida E. Wineinger is the owner and holder of ten full-paid shares of the capital stock of the Farmers' & Stockmen's Loan & Investment Association, for each of which shares said stockholder has paid to the association the sum of $100."

No clearer statement of her relation to the defendant could well be made. The fact that the second paragraph of the instrument provides that she is not entitled to participate in the profits of the association, but shall be paid interest at the rate of 8 per cent. per annum, payable semiannually, upon $100 for each share represented by the certificate, does not change the character of her stock, nor alter her relation to the company. This class of stock in an incorporated business enterprise would be what is denominated interest-bearing stock. Such stock is, in effect, preferred stock, entitling the holders to the payment of the stipulated interest before payment of dividends to common stockholders can be made, and it gives to holders the same rights as stockholders, and renders them subject to the same liabilities as stockholders as ordinary preferred stock would. McLaughlin v. Detroit & M. Ry. Co., 8 Mich. 100; Barnard v. Vermont & M. R. Co., 7 Allen (Mass.) 512; Miller v. Pittsburgh & C. R. Co., 40 Pa. 237, 80 Am. Dec. 570; 6 Fletch. Cyc. Corp. 6002.

[6] In construing the rights of the holders of stock in a joint-stock association, the courts, by analogy, apply the rules governing the rights of stockholders in incorporated companies so far as the rules of equity will permit. Yeaman v. Galveston City Co., 106 Tex. 389, 167 S. W. 710, Ann. Cas. 1917E, 191; Cameron & Co. v. Bank, 4 Tex. Civ. App. 309, 23 S. W. 334; 7 R. C. L. 28. The holder of preferred stock would, in the absence of a special agreement, entitle its owner to receive dividends from the earnings of the company before the holders of common stock could share therein. The fact that her certificate provides that she is to have 8 per cent. interest upon the par value of each share she holds, whether any profits are realized by the association from its business, gives her shares a greater degree of preference than is usually accorded preferred stock. Other preferences accorded her by the certificate are that she may, by surrendering it for cancellation, upon 30 days' notice, receive its par value with the stipulated interest to the date of cancellation, and further contains the unusual provision that she may borrow from the association up to 90 per

cent. of the face value of the stock, giving, as collateral security, only the certificate itself. The status of a holder of preferred stock in a corporation, as declared in Reagan Bale Co. v. Heuermann (Tex. Civ. App.) 149 S. W. 229, is that of a stockholder, and not a creditor of the corporation.

"Whatever the extent of the preference in that case may have been, speaking generally, stock, whether it be common or preferred, does not represent indebtedness. Its possession means ownership of the company." Sternbergh v. Brock, 225 Pa. 279, 74 A. 166, 24 L. R. A. (N. S.) 1078, 133 Am. St. Rep. 877.

"The relation of debtor and creditor, however, does not exist between the preferred stockholders and the corporation, as to any right to a preferred or guaranteed dividend until the dividend is declared; the preferred dividend being nothing more than money paid out of profits by a corporation to one class of shareholders in priority to that to be paid to another class." Kain v. Angle, 69 S. E., 355, 111 Va. 415.

"As the term itself implies 'preferred stock,' stock which gives to the holder a preference over the holder of common stock with respect to the payment of dividends, * * * the relation between a corporation and a holder of its preferred stock is one of contract, and the terms of the contract are to be ascertained from the certificate read in connection with the provisions of the general laws of the state, the articles of incorporation, and the by-laws. * * * Except for the preference, the holder of preferred stock has the same rights, and is subject to the same liabilities as the holder of common stock; that is to say, in the absence of provisions in the general laws of the state, the charter, or by-laws to the contrary, the holder of preferred stock, in virtue of his connection as a stockholder, has the same right to vote his stock as the holder of common stock has to vote his stock, but, in the absence of constitutional or statutory provisions to the contrary, it is within the power of the corporation to provide that its preferred stock shall not entitle the holder to vote it; and, whenever the articles of incorporation or by-laws contain such a provision, it will be binding upon all persons who accept such stock, since the provision does not violate any rule of common law nor of public policy, and does not affect the public, but is merely a matter of contract." 6 Fletch. Cyc. Corp. §§ 3621, 3632, 3638.

In Ashley v. Dowling, 203 Mass. 311, 89 N. E. 434, 133 Am. St. Rep. 296, where persons organized a co-operative store, the interest of each being represented by certificates of stock, the court held that payment for stock made by a purchaser constituted him a partner, though he never received a certificate, nor attended a meeting of the association, nor had any knowledge of the

firm's business; such payment being a sufficient participation in the company's affairs to indicate his assent thereto.

[7, 8] In our opinion, the fact that the declaration of trust provides that the holders of preferred stock are not entitled to vote is immaterial in determining her relation to the company, and has no bearing upon the right asserted in the first count of her petition. We are sustained in this position by the following well-considered cases: Shaffer v. McCullough, 192 F. 801, 113 C. C. A. 535; Inscho v. Mid-Continent Development Co., 94 Kan. 370, 146 P. 1014, Ann. Cas. 1917B, 546. Moreover, this point was carefully considered by our Supreme Court in the Thompson v. Schmitt Case, supra, and it was definitely decided contrary to plaintiff's insistence. The court stated that, although a contrary view had been taken by other eminent courts, nevertheless the rule is declared to prevail in this state that, even in the case of a pure partnership, a valid contract might be made where even one partner would have the management of the business to the exclusion of all the others. In the instant case the trustees did not have such exclusive management. Their conduct of the affairs of the association were, in a large measure, under the control of the common stockholders, and while the holders of preferred stock were denied the right to vote at stockholders' meetings, it is provided by article 7 of the declaration of trust that the earnings of the association shall be applied, first, to the interest accrued and accruing to the preferred stock which is held by investing and borrowing stockholders; that the funds paid in upon either class of stock shall be held by the board of trustees as a reserve fund, which fund shall constitute additional security to preferred stockholders against any losses or liability. It is further provided in article 16 that no dissolution of the association should ever be effected while there is outstanding any unpaid or unliquidated preferred stock or obligation of the trustees without the written consent of the holders of two-thirds of such preferred stock. To this extent at least, preferred stockholders may exercise the right of control over the powers granted the board of trustees.

When considered as a whole, we think the petition shows that the association is a joint-stock company or business trust; that the money paid either for preferred or common stock is its capital for carrying on its business; that the individuals named as defendants are its trustees, directors, or, in other words, the managing partners; that appellant, as the holder of interest-bearing stock, is a member and not a creditor of the association; that she has contributed to the capital stock and accepted certificates reciting that fact, rather than loaned her money at interest; that as such stockholder she is bound by the provisions of the declaration of trust, unless her subscription was induced by fraud, and that, too, without regard to whether the reference in her certificates to the by-laws and articles of association are sufficient to incorporate them as a part of her contract.

[9] Though its allegations are not as full as the rules of good pleading require, we think the petition, considered as a whole, is sufficient, as against the general demurrer, to entitle plaintiff to recover upon her cause of action grounded upon fraud. The representation that the $100,000 of common stock had been sold and fully paid in was the statement of a fact, and, if untrue, gives rise to a suit for rescission or damages. Plaintiff does not allege fraud committed by promoters, and her rights are not governed by the rule announced in Cator v. Commonwealth Bonding & Casualty Co. (Tex. Com. App.) 216 S. W. 140; Railway Co. v. Granger, 86 Tex. 350, 24 S. W. 795, 40 Am. St. Rep. 837; Weathersby v. Lumber Co., 107 Tex. 474, 180 S. W. 735, 7 A. L. R. 1440. Her allegations show that the association was in existence and functioning at the time she purchased her stock; that the representations were made by its agents, some of whom were trustees, and were made when she was not a member and could not be bound by the articles of association. The fraud alleged is in matters of inducement. She says it was the fraud which induced her to part with her money and become a member. The gist of her action in this particular is that, by reason of the fraud, her contract to become a member is a nullity, and the effect of a judgment sustaining her contention would be to declare she never was legally a stockholder, although she paid for and accepted certificates of stock.

[10] In this connection, it is insisted that before she can maintain her suit she must pray for an accounting and dissolution. While that is a general rule, we doubt whether it is always necessary to apply it in partnerships composed of more than two persons where the plaintiff seeks to cancel the contract upon the ground that it was entered into by the fraud of one of the other partners. Kimmins v. Wilson, 8 W. Va. 584; Miller v. Kraus (Cal. App.) 155 P. 834. In the cases cited by both parties it appears that the plaintiff prayed for cancellation, dissolution, and accounting, and, in one case, for a receiver; but these were ordinary partnerships with a limited number of partners, and because such relief was requested, and not resisted by the other, it was granted by the court. Caplen v. Cox, 42 Tex. Civ. App. 297, 92 S. W. 1048; Peterson v. Barrow (Tex. Civ. App.) 105 S. W. 212.

We think it would be manifestly unjust to require an accounting in this case. The record shows that the capital stock is $500,-000, and, so far as we know, it has all been subscribed and may be in the hands of hun-

dreds or even thousands of stockholders who are satisfied with the status quo and do not want it disturbed. One of the elements which is taken into consideration, and which influences the application of the rule for an accounting in an ordinary partnership, is the right of delectus personarum. The withdrawal of one partner, whether by judicial decree or otherwise, would, in effect, dissolve the partnership; but the doctrine of delectus personæ has no application to joint-stock companies and business trusts. We think the law which governs the right of stockholders in corporations to cancel their subscriptions for fraud in inducing the contract or purchase applies; and it is never proper, in such suits involving corporate stock, for the court to decree an accounting and a dissolution of the corporation. Cook on Corporations (6th Ed.) § 140; Fletch. Cyc. Corp. pp. 1339, 1354, 3778, 3780, 3790, 5228, 6525, 6527; Rowley's Partnership, § 222; Bates, Partnership, § 897.

We affirm the judgment in so far as it relates to all of the plaintiff's grounds of action except that based upon fraud. As to this issue we think the allegations are sufficient, and the judgment is reversed, and the cause remanded.

JACKSON, J., not sitting