**REEVES et al. v. PECOS COUNTY WATER IMPROVEMENT DIST. NO. 1 et al. (No. 1947.)\***

Court of Civil Appeals of Texas. El Paso. March 17, 1927.

Rehearing Denied April 14, 1927.

1. **Waters and water courses** ⚵154(1)—Water rights are "easements" from date of deeds conveying rights and are "covenants running with land."

Water rights secured by deed are "easements" carved out of fee simple of irrigation system attached to respective tracts of water district and appurtenant thereto, and part thereof, from date of deeds conveying such rights, and are "covenants running with land" in nature of real estate.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Covenant Running with the Land; Easement.]

2. **Pleading** ⚵312—Exhibit, contradicting allegation of pleading, controls when considering pleading on demurrer.

When an exhibit is referred to in the pleading, and its inspection shows facts contradictory to the pleading, in considering the pleading on

demurrer- the exhibit, and not the allegation in the pleading, must control.

3. **Waters and water courses ⬤⟿254—Contract among landowners in water improvement district prohibiting transfer of water to other lands held unenforceable (Rev. St. 1925, arts. 7555, 7766, 7767).**

Under Rev. St. 1925, arts. 7555, 7766, 7767, a contract among landowners in water improvement district prohibiting transfer of water to other lands within district having similar water rights from a common source of supply, but which lands it is difficult or impracticable to irrigate, or prohibits a person owning possessory right to adjoining lands and who has secured a water right to use of water from irrigation of such lands, is unenforceable, as discriminatory against rights of such lands.

4. **Contracts ⬤⟿123(1)—Corporations organized for public purposes cannot, by contract, render themselves incapable of performing public duties.**

Corporations organized for public purposes cannot, by contract, render themselves incapable of performing their duties to public, or in any way absolve themselves from an obligation which forms main consideration for giving them corporate existence.

5. **Waters and water courses ⬤⟿254—Water improvement district must exercise functions in interest of public without discrimination.**

The moment a water improvement district is organized, its functions must be exercised in the interest of public on terms given under law of its creation and without discrimination.

6. **Waters and water courses ⬤⟿254—Landowners in water improvement district may not enjoin district from furnishing water to adjoining lands (Rev. St. 1925, arts. 7555, 7766, 7767).**

Landowners in water improvement districts *held* not entitled to restrain water district through its officers from furnishing water to lands adjoining district, in view of Rev. St. 1925, arts. 7555, 7766, 7767, relative to water rights.

7. **Waters and water courses ⬤⟿254—Contract for water must conform to purposes and provisions of law for water distribution.**

Contract for water, to be performed under the law for distribution of water, may not contravene the law, but must conform to the purposes and provisions of law for water distribution.

Appeal from District Court, Pecos County; C. R. Sutton, Judge.

Suit by J. E. Reeves and others against the Pecos County Water Improvement District No. 1 and others. From an order of dismissal, plaintiffs appeal. Affirmed.

Howell Johnson, of Ft. Stockton, W. A. Wright, of San Angelo, and Harper & Howard, of El Paso, for appellants.

R. D. Blaydes and Jos. G. Montague, both of Ft. Stockton, J. E. Starley, of Pecos, and Belcher & Montague, of Del Rio, for appellees.

WALTHALL, J. The trial court sustained a general demurrer and certain special exceptions to plaintiff's third amended original petition, on which they went to trial. The plaintiffs refusing to amend, the case was dismissed, and, from the order dismissing the case, plaintiffs prosecute this appeal.

The petition and the several exhibits attached thereto and made parts thereof are exceedingly lengthy, and we will state only such portions thereof as seem necessary to disclose the issues between the parties at interest, resulting from the order of the court in sustaining the demurrer.

The suit is brought by J. E. Reeves and some 15 others against the Pecos County water improvement district No. 1, a municipal corporation, organized under the laws of Texas for irrigation purposes, and its directors, naming them, and sued in their official and individual capacities, and Dan Bihl and W. P. Rooney.

The petition alleges:

That prior to May 6, 1913, the Ft. Stockton Irrigated Lands Company, a Texas corporation, owned certain properties including the certain irrigation system as then constructed, located, and in operation for supplying water from Comanche springs and creek to irrigable lands in blocks No. 1 and 2, and a tract of 108 acres of land and known as block A, together with all canals, dams, laterals, and appurtenances, right of way through said lands, together with all water rights, privileges, and easements of every kind and character, all tolls, incomes, revenues, or profits issuing from or growing out of said irrigation system. That on said May 6, 1913, through the foreclosure of a deed of trust on said properties, James W. Oldham and William B. Burget became the owners of all of said properties. That the Ft. Stockton Irrigated Lands Company was formed for the purpose of irrigating the lands described in blocks 1, 2, and A, and with the purpose of irrigating said lands, and, recognizing the necessity of limiting the area of lands to be irrigated, so that from the water supply there would be ample water to irrigate the lands intended by them to be irrigated therefrom, they never sold any water right to any land outside of the blocks 1, 2, and A, of said irrigation system. That their successors in ownership of said lands and irrigation system pursued the same policy and never sold any water rights to any lands, except in said three blocks. That all landowners of water rights in Pecos County water improvement district No. 1, thereafter organized and bought said irrigation system, derived all of their water right titles through said Ft. Stockton Irrigated Lands Company and said

---

Oldham and Burget. That each and every water right conveyed contains the following clause:

"(2) The said water shall be used for irrigation purposes and domestic uses only, and only upon the lands above described, and under no circumstances shall said water, or any portion thereof, be used upon or become appurtenant to any other tract or tracts of land, or for mining, milling, power, or for other purposes not directly connected with, or incidental to, irrigation purposes upon said land."

Which clause in said water right was a general scheme of the owners of said irrigation system to limit the territory of the lands to be irrigated from said irrigation system, and to no other lands; or, if the language of said reservation to the use of said water are not all in the exact language quoted, then they and all other owners of water rights in said blocks, including the lands owned by plaintiffs and defendants, prior to the formation of the Pecos County water improvement district No. 1, were expressly limited to the use of water on the land so conveyed for irrigation purposes only and upon the lands owned by the grantee in said blocks, and were forbidden the use of said water upon other lands, or for any other purpose. That Oldham and Burget entered into said general scheme of restriction, as shown by their deed to William A. Hadden, trustee, whereby they limited the amount of water to be used from said system as follows:

"Exceptions and Reservations.

"(1) There are now outstanding certain contracts executed by the grantors herein, or by their predecessors in title, Ft. Stockton Irrigated Lands Company, for the conveyance, upon the terms and conditions in said contracts limited of certain tracts and parcels of irrigable lands in blocks 1 and 2, Ft. Stockton Irrigated Lands Company, together with certain water rights to be made appurtenant to said lands.

"The grantors reserve from this conveyance the said water rights, with the right, power, and privilege to the said grantors to make, execute, and deliver to the persons entitled thereto good and sufficient water deeds, as in said contracts provided, or, in the event of forfeiture of said contracts, grantors shall have the right to make new contracts for the conveyance of said water rights, covering same terms and conditions, or, may by their deed directly apply said water upon said lands or other lands of equal acreage in lieu thereof."

The second reservation in the deed, but not stated in the petition, provides that the second party in the deed will, upon demand, join in the execution of water right deeds to contract holders.

The third provision of said deed contains the following clause:

"This conveyance is made expressly subject to all outstanding deeds of water rights and contracts for water rights appurtenant to lands in either blocks 1 and 2, Ft. Stockton Irrigated Lands Company, or block A, and whether said water right deeds or contracts for water were executed by the Ft. Stockton Irrigated Lands Company or by the grantors herein, and the grantee herein expressly assumes and agrees to carry out and perform all and singular the terms and conditions of said several water deeds or contracts to be kept and performed by either of the said grantors herein."

The fourth provision of said deed contains these limitations:

"This conveyance is also made upon the further limitation that the second party shall not, and will not hereafter, give or grant any additional water rights, or make water rights appurtenant to any lands in blocks 1 or 2, Ft. Stockton Irrigated Lands Company, which such additional water rights would, when added to those now covered by deeds or contracts therefor, as hereinbefore described, make water rights appurtenant to an aggregate of lands in both blocks 1 and 2, and block A, in excess of 7,000 acres, and, further, that grantee will not contract water nor supply water, during the irrigation season, upon any lands outside of blocks 1 and 2, and block A,"

—and makes certain provisions as to added charges for water supplied and for disposition for excess of water which provisions seem to have no application, and are not pleaded.

By the terms of the deed the grantee, Hadden, trustee, was to pay all taxes on the property not then due. The deed provides that its provisions shall inure to and be binding upon the respective heirs, grantees, successors, and assigns of the parties thereto. The deed is referred to as Exhibit B.

The petition, then continuing, alleges that:

"By reason of the facts above alleged, and the grant of water rights to each of these plaintiffs, and to all other water right users in the Pecos County water improvement district No. 1, these plaintiffs say that all of said water rights accrued to all of the water right users in said district No. 1 long prior to the formation of the said Pecos County water improvement district No. 1, and the title to the same comes either through the said Ft. Stockton Irrigated Lands Company or the said Oldham and Burget, and that said covenants and easements were appurtenant to the lands of each individual owner of lands and water rights within said district, and were with said land and limited the land that might be irrigated from said irrigation district at the time that said Pecos County water improvement district No. 1 was formed."

The petition alleges the formation of the Pecos County water improvement district No. 1 on November 10, 1920, by action of the county commissioners' court, and attaches a copy of the order made organizing the district.

It is alleged that on May 4, 1917, Oldham and Burget, being the owners of the lands mentioned and the waters of Comanche springs and creek, and the irrigation system

as then constructed to irrigable lands in blocks 1, 2, and A, by deed of that date, signed by themselves to Hadden as trustee, said conveyance, made a part of the petition, conveyed to Hadden said lands, including the exceptions and reservations above noted, the grantee, Hadden, in said conveyance is included the following limitation:

"This conveyance is also made upon the further limitations that the second party shall not and will not hereafter give or grant any additional water rights or make water rights appurtenant to any lands in blocks 1 and 2, Ft. Stockton Irrigated Lands Company, which said additional water rights would, when added to those now covered by deeds or contracts theretofore and hereinbefore described, make water rights appurtenant to any aggregate of land in both blocks 1 and 2, and block A, in excess of 7,000 acres, and, further, that grantee will not contract water nor apply water, during the irrigation season, upon any lands outside of blocks 1, 2, and A."

By which said reservation it is alleged the said Hadden, trustee, and those for whom he held said property in trust, were prohibited from applying any of the water so deeded to any other lands, except such as were specified in said reservation.

It is further alleged that on April 27, 1921, W. A. Hadden, individually and as trustee, and others, naming them, including Dan Bihl and the Pecos County water improvement district No. 1, conveyed to the Pecos County water improvement district No. 1, all of said properties, rights, appurtenances, etc., that were conveyed, as stated, to Hadden, trustee; the said conveyance being made, by exhibit, a part of the petition. In that conveyance is the following provision specially pleaded:

"It is expressly understood and agreed that this deed is made subject to all exceptions and reservations made in the deed from James W. Oldham and William B. Burget to William B. Hadden, trustee, of record (stating the record) to which reference is here made; grantee, its successors, and assigns accepting and agreeing to abide by and carry out all of the terms and conditions in said deed imposed on the grantees in said deed."

The petition avers that by the above agreement in the deed the Pecos County water improvement district No. 1 is bound and obligated not to furnish water to any lands not included in said blocks 1, 2, and A.

It is averred that the waters, dams, rights, easements, properties, and belongings of said district are the identical properties acquired through said two deeds made exhibits and from which the above quotations are made.

The petition then states that plaintiffs own within the boundaries of said district, and within the boundaries to which water could be applied for irrigation purposes, under said two deeds certain lands described, and have water rights appurtenant thereto,

and did have prior to the formation of said district, and from the same source of water supply, and subject to the same provisions mentioned in said two deeds; that they acquired said lands from the said Ft. Stockton Irrigated Lands Company, or their successors, Oldham and Burget, or by mesne conveyances from said parties, and attach a tabulated statement of their titles and water rights as alleged.

The petition then avers what the pleader conceives to be the legal effect of the said exceptions, limitations, and prohibitions above stated, and alleges that, notwithstanding same, said water improvement district and its officers and directors, in violation of their duties and obligations, did, on the 16th day of February, 1923, grant to Dan Bihl water rights for 40 acres of land in block C, and refers to the petition of said Dan Bihl, and the orders of the board of directors of the water district granting same, and makes same parts of their petition, as more fully indicating the said grants; that said Dan Bihl was assuming to have transferred to him water rights on said land in lieu of land within said water district, upon which he had a water right, which water right prevented him from using same only upon lands within the district, and nowhere else.

The petition then avers that it was not within the power of the water district, its officers, and directors to make said grants, and that same were void.

The petition then alleges that on the 27th day of October, 1923, the water district, its officers, and directors granted to W. P. Rooney water rights on and to and made appurtenant and transferred to a certain portion of a 260-acre tract a part of section No. 2, block No. 146, T. &. St. L. Railway Company survey, describing same by metes and bounds, and refers to the application of Rooney and the order granting same, and makes each a part of the petition, and makes a similar declaration as above as to the powers of the directors to make said grant.

It is then averred that Bihl's said land within the district and in lieu of the water rights outside the district was susceptible to irrigation and had been irrigated by gravity flow, and that the water rights granted Bihl in block C were one mile distant from said district and not adjacent thereto, and that the water rights granted to Rooney first described was 1½ miles distant from said district, and not adjacent thereto, and that the 260-acre tract to a part of which water rights were granted was 2 miles distant from said district, and was not adjacent thereto. It is averred that three days after said water rights as above were granted to Rooney, he transferred same to T. L. Mitchell, president of the board of directors of said district, and Joe Schlegel, secretary of said board, and "plaintiffs here now aver that said board of

directors, defendants, were acting in fraud of the rights of these plaintiffs, and contrary to their duties as officers of said water improvement district, knowing the facts herein alleged, and that said water rights were granted to said Rooney on said 260 acres of land for the purpose and with the intent and prior agreement, and that the same was to be transferred to them, the said Mitchell and Schlegel, and that said transfer of said water rights to the said Bihl and Rooney was beyond the power of said officers and directors to grant, and the grant thereof was a nullity and wholly void, and that all the lands to which said water rights were appurtenant, and which were transferred to the W. P. Rooney lands outside of said district boundaries were easily susceptible of irrigation from gravity flow."

It is alleged that the defendants have furnished to Bihl and Rooney from the plant of the water district, and threatened to continue to do so to said lands outside of said district unless restrained by injunction.

The petition then alleges that the waters under the control and belonging to the water district are not sufficient to irrigate the lands of plaintiffs and other water right lands in said blocks 1, 2, and A, and that, if the waters are permitted to be diverted, plaintiff's lands under irrigation, and which is necessary to raise crops, will suffer for lack of water and will be damaged to their irreparable injury, and that said damages may not be calculated in dollars and cents.

The application of Bihl to the board of directors, of date February 18, 1923, above referred to and made a part of plaintiffs' petition and the order of the board granting same, are lengthy, and we will state only the purport of each. His petition recites that he owns the six tracts of land, describing same, all parts of original subdivision of said block No. 1, and containing in all 60 acres of land and carrying permanent water rights and all within the boundaries of said water improvement district. It recites that Bihl is the owner of a part of block C lying adjacent and contiguous to said water improvement district; said tract containing 40 acres, more or less, and describing same by metes and bounds. It recites that said 40 acres is not irrigated land and does not carry rights to water for irrigation purposes, but that same may be irrigated from the water supply of said district without prejudice to the rights of others within the district; that the said land is of deep soil, fertile, and adjacent to the canals and laterals of the water system of said district; that his said tracts of land first described and carrying water rights in the district are poor and impoverished soil, gravelly and nonproductive, and not as susceptible of irrigation from said district water system as said 40 acres in block C; he disclaims homestead rights upon all of said tracts. He requests that the water rights appurtenant to said six tracts as above described, and within the district, be transferred to and be made appurtenant to said 40-acre tract in block C, and upon an equal footing with water righted tracts within the district, and that block C be admitted in said district upon such equal footing. Bihl in said application, upon its approval and transfer of the water rights, expressly waives all right to water in said tracts in said district.

The board, on considering Bihl's application, recites: "And it further appearing to this board that to grant the same would in no wise prejudice or injure the rights of any other water righted lands within said district, and the board, having fully considered the same, is of the opinion that said application should be and the same is hereby granted, accepted, and confirmed under the terms and conditions in said application set forth," subject to certain conditions such as the payment of taxes and right of ingress and egress thereto for the purposes stated. The board ordered the transfer of the water rights from four of said tracts of Bihl within said district to said 40 acres' tract of land and known as block C admitted into said district, and made other orders with reference thereto not deemed important to this controversy.

The application of W. P. Rooney and action of the board of directors thereon, having been referred to and made a part of plaintiffs' petition, show substantially the following: On October 22, 1923, Rooney made application for admittance into the boundaries of said water improvement district of a tract of land sufficiently described containing 162 acres, more or less, the application representing same to lie adjacent to and adjoining the boundaries of said district, that none of said tract is now entitled to water for irrigation from the present or former irrigation system, but that same lies adjoining the east half section 2, block 146, T. & St. L. Railway Company, which last-mentioned tract of petitioner is asking, in another application, to have admitted to said district. The application makes certain representations as to said tract and the advantages to the district to have same admitted, not deemed necessary to state.

The board of directors, on consideration of Rooney's application, say that the Rooney tract of land had been surveyed, field notes made, the boundaries marked, corners established, and the monuments erected, all under the direction of the board, and granted Rooney's application, subject to the condition stated, the condition not being material to the matter here under consideration; the allegation in the petition being that the officers and board are without power to grant the application.

Plaintiffs pray for judgment restraining the officers and board of directors of the

water improvement district from furnishing any water upon any lands not in blocks 1, 2, and A, described, and for such other and further relief to which plaintiffs may be entitled either in law or equity, and for all costs of suit.

## Opinion.

We believe that a brief and condensed summary of the material facts alleged in the petition will be helpful in considering the practical questions involved in this controversy. On May 6, 1913, the Ft. Stockton Irrigated Lands Company, an irrigation corporation, owned certain defined lands, and constructed an irrigation system to water these lands and to sell both land and water. In placing the water on the land the water deeds provided the water should be used on the land sold in connection with it and to no other. After selling to various people about 6,700 acres of land and water which practically consumed the water supply, the Ft. Stockton Irrigated Lands Company conveyed the unsold balance of the properties to Oldham and Burget. Oldham and Burget sold the properties to William A. Hadden, trustee; the deed containing the reservations set out in the statement above. The lands covered by these water rights were organized into the Pecos County water improvement district No. 1, under the laws of the state of Texas, and the district bought the irrigation system. Plaintiffs each own a tract or tracts of land in the district, and the supply of water appurtenant to each tract.

The application of Dan Bihl and the action of the board of directors thereon involved the question of the power of the board to admit into the district land not in the district, that is, not in blocks 1, 2, or A, and to transfer to such land water rights owned by Bihl from lands in the district, and place same on equal footing with lands in the district.

The application of W. P. Rooney and the action of the board of directors thereon involve the question of the power of the board of directors to admit into the district the lands described and to convey and make appurtenant to such lands water rights belonging to the district.

These lands, by orders of the board of directors had been admitted into the district, or rather the district had been enlarged so as to embrace said lands, and the water rights applied for had been conveyed to said lands, when, some time thereafter, plaintiffs, owning lands and water rights within the district as it formerly was, brought this suit, complaining of the action of the board in granting the applications of Bihl and Rooney, and praying that the officers and board of directors of the district be restrained from furnishing any water upon any lands not in blocks 1, 2, and A.

The material question presented would seem to be, Can the plaintiffs, by reason of their ownership of tracts of land in the water district, restrain the officers and board of directors from furnishing to Bihl or Rooney, or both, water for irrigation purposes on their said lands, and, if so, does the petition state the facts entitling them to such relief?

After stating the various exceptions, reservations, and limitations contained in the deeds of conveyance, as above, plaintiffs allege that the waters under the control and belonging to the water improvement district "is not sufficient to irrigate the lands of these plaintiffs and other water right lands included in blocks 1, 2, and A, hereinbefore described, and if the defendants herein are permitted to divert the water to the lands of the said Bihl and Rooney, and other persons, which said officers and directors are threatening to do, and are doing, that the lands of these plaintiffs, which are under irrigation and which said irrigation is necessary to raise crops, and said crops thereon, will suffer for a lack of water to irrigate said crops, and said crops will be greatly damaged by reason of a lack of water therefor, to the great and irreparable injury of all these plaintiffs by the loss of crops from the lack of water; that said damages may not be calculated in dollars and cents." It is not claimed that the lands of Bihl and Rooney added to the lands in the water district would exceed the 7,000 acres to which the petition shows water rights could be conveyed under the title deeds pleaded, but the insistence is that the Bihl 40 acres and the Rooney 162 acres are not in the water district, that is, not in any one of blocks 1, 2, or A, nor are they adjacent thereto, and that the water available under the water system is not sufficient in quantity to irrigate plaintiffs' lands, and other water right lands in blocks 1, 2, and A, and the Bihl and Rooney lands, and that, to divert the water to the Bihl and Rooney lands, plaintiffs' lands would suffer for lack of water.

[1] The water rights secured to plaintiffs, as pleaded, are contract rights, are easements carved out of the fee simple of the irrigation system attached to the respective tracts of the water district and appurtenant thereto and a part thereof from the date of their several deeds conveying said water rights, and are covenants running with the lands and in the nature of real estate. Edinburg Irr. Co. v. Paschen et al. (Tex. Civ. App.) 223 S. W. 329, and cases cited. Also the opinion of the Commission of Appeals in affirming the case, 235 S. W. 1088, in which it is further said that permanent water rights, evidenced by grants are easements appurtenant to the land to be watered and are a servitude upon the irrigation system, and that every one dealing with the land to which the easement is appurtenant, or with

the servient irrigation system, with notice, must take subject to the easement. The petition, we think, sufficiently states the lands owned and the interests of plaintiffs in the water available under the water system.

If there is a water right deed or contract separate and apart from the deed to the tracts of land, same is not pleaded nor a copy thereof found in the record. Plaintiffs allege that each and every water right conveyed in the district contains the clause pleaded, that is, clause 2, and sets it out. That clause, by its terms, has reference to the use to be made of the water by the purchaser of the tract of land and water to which it is conveyed, and, while it is alleged that a similar clause is contained in all conveyances of land and water in the water district, it is a limitation of the use to be made of the water by the purchasers of the several tracts of land conveyed and the water is appurtenant to the tract of land conveyed. The deed from Oldham and Burget to Hadden, trustee, in the amount of water to be conveyed, as above stated in the "exceptions and reservations," refers to the several tracts of land theretofore conveyed and the blocks in which same are located, and reserve from that conveyance the said water rights, with the right, power, and privilege to the said grantors to make water deeds, as in said contracts provided. Or, in the event of forfeiture of such contracts, grantors shall have the right to make new contracts for the conveyance of said water rights covering same terms and conditions, or may by deed apply said water upon said lands or other lands of equal acreage in lieu thereof, and Hadden, trustee, agrees to carry out said terms and conditions in that deed, and in his deed to the improvement water district refers to the deed to him and provides that the district shall carry out all of the terms and conditions imposed upon him.

It will be noted that, while the deeds conveying water rights must be upon the same terms and conditions as those granted, the limitation as to the acreage to which water rights may be granted shall not exceed 7,000 acres. With the conditions above as to land and water the water improvement district was organized. The territory embraced is described by various metes and bounds; its total number of irrigated acres is stated to be 6,493.58; the total number of dry acres is stated to be 390. The deed is executed by Oldham and Burget to Hadden, trustee, with the exception of certain portions of land over which Comanche springs arises and runs and the margin around same. It conveys the entire irrigation system as then constructed, located, and operated for supplying water from Comanche creek and springs to irrigable lands in blocks 1 and 2 Ft. Stockton Irrigated Lands Company, and

293 S.W.—59

108 acres of land known as block A. The conveyance contains practically the same reservations, limitations, and conditions above stated in the deed from Oldham and Burget to Hadden, trustee. Plaintiffs state the acreage and the water rights they own within the water improvement district, and that their titles are derived through said Ft. Stockton Irrigated Lands Company, or their successors, naming them. The acreage owned by them aggregates less than 800 acres.

The petition states the above reservations and limitations and alleges that by the terms of the deeds under which they own said lands and water rights the water improvement district is prohibited and bound not to permit the use of any of the waters belonging to the district to be diverted to or become appurtenant to any lands not embraced in said blocks 1, 2, and A, and not to permit the use of said waters in said district in excess of 7,000 acres, and that it is in violation of the duties and obligations of the district, its officers, and directors to grant to Bihl and to Rooney the use of the waters and to grant water rights on lands not in blocks 1, 2, or A, lands outside of said district, as stated, and that said lands of Bihl and Rooney are not adjacent to said district.

As stated, the petition refers to and makes exhibits of the applications of Bihl and Rooney for water rights for the two tracts of land as above stated and the orders of the board of directors granting said applications, and does not in the petition or otherwise except therefrom any statement of fact or facts in any of said exhibits. Bihl's application for water rights for his 40 acres says that land "lies adjacent to the canals and laterals of the water system of said district." The board, in its order accepting Bihl's application, says, "And it further appearing to this board that to grant the same would in no wise prejudice or injure the rights of any other water righted lands within said district," granted the application under its terms and conditions, and in said order further recites that the description of the land by metes and bounds is adopted, and is admitted into the water improvement district.

The application of Rooney recites that his tract of land, for which he makes application for admittance into the district, "lies adjacent to and adjoining the boundaries of said district." The board, in considering Rooney's application for admission into the district, recites that "to grant the same would in no wise prejudice or injure the rights of the other water righted land, or landowners now within said district," and granted the application and admitted same into the district after having same surveyed, boundaries marked, corners established, and monuments erected.

The exhibits, in their recitations, conflict

with the statements in the petition as to whether the tracts of land lie adjacent to said district, and as to whether the water righted lands in the district will suffer for lack of water to irrigate crops, by reason of conveying water rights to the Bihl and Rooney lands and admitting them into the district.

[2] The rule is that when an exhibit is referred to in pleading, and its inspection shows facts contradictory to the pleading, in considering the pleading on demurrer, the exhibit, and not the allegation in the pleading, must control. Freiberg, Kline Co. v. Magale, 70 Tex. 116, 7 S. W. 684; Wininger v. Farmers' & Stockmen L. & I. Ass'n et al. (Tex. Civ. App.) 278 S. W. 932, in which last above case it is said that, in passing upon the sufficiency of the petition as against the general demurrer, it was proper for the court to look to and consider the legal effect of the exhibit, and, if the legal effect of the exhibit in any of its provisions conflicts with the allegations of fact in the petition, the exhibit will control in determining the sufficiency of the petition, and citing a number of cases so holding, and to which we refer without quoting them.

Under the rule above stated as to exhibits contradictory of the facts pleaded in passing upon the demurrer, we must read into the petition the facts stated in the exhibits to the effect that the Bihl and Rooney lands are adjacent to the district and that the water rights of plaintiffs will not be prejudiced by admitting the Bihl and Rooney lands into the district.

The petition does not state that by reason of the Bihl and Rooney lands having been admitted into the district, or the lands given water, plaintiffs' lands have not been furnished with an adequate supply of water. The petition, however, independent of the exhibits, in stating the supply of water that will be given plaintiffs' lands with the Bihl and Rooney lands in the district, and the damages that will result from the lack of an adequate supply of water, we think, is in anticipation only and not in fact, but speculative. However that may be, we prefer to rest our holding as to the sufficiency of the petition upon what we conceive to be the rights of all the parties under the several matters pleaded and the law regulating the use of water for irrigation in water improvement districts in this state.

The difficult questions to be determined arise upon the effect to be given to the several provisions alleged to be contained in the water rights conveyed and to the effect that the water therein granted shall be used only upon the tracts of land for which same was conveyed and to no other tract or tracts; and the somewhat similar provisions and restrictions in the deed from Oldham and Burget to Hadden, trustee, and stated in the several exceptions, restrictions, and limitations above in which it is stated, in effect, that the conveyance is made upon the further limitation, among others, that the grantee, Hadden, trustee, will not contract water nor supply water during the irrigation season upon any lands outside of blocks 1, 2, and A; and the allegation that the conveyance from Hadden, trustee, to the water improvement district, contains the provision and limitation to the effect that the deed is made subject to all exceptions and reservations in the deed from Oldham and Burget to Hadden, trustee of record, and that the grantee, water improvement district, accepts and agrees to abide by and carry out all of the terms and conditions in said deed.

Are the above provisions, restrictions, and limitations effective upon the owners of water righted lands in said blocks 1, 2, and A, so that they may not convey them to the district, and receive in lieu thereof water for tracts of land outside of blocks 1, 2, and A, whether the outside tracts are adjacent to the original district or not, and can the district, in view of the several provisions in the deeds, as above, convey water or water rights to lands outside of blocks 1, 2, and A? In other words, can the district under its title to the water system enlarge the district so as to embrace lands not in any one of said blocks 1, 2, and A?

If the water improvement district may not, by reason of the several restrictions referred to, convey water to lands outside of blocks 1, 2, and A, and if the plaintiffs, by reason of being owners of water righted lands in blocks 1, 2, and A, can enjoin the district from enlarging its territory so as to include other lands outside of blocks 1, 2, and A, we think the petition not subject to the general demurrer.

It will be impossible to discuss all of the articles of the statutes of this state which seem to affect the questions presented. Suffice it to say that the Legislature during the past number of years has passed laws affecting the right to the use of the waters of the state for irrigation and other purposes, permitting the establishment of water improvement districts, including the control and distribution of its waters by and through its governmental agencies and bodies politic and corporate with such powers of government within the districts and with authority to exercise such rights and functions, quasi judicial, in such matters legislated upon. The board of directors are given control over the management of all of the affairs of the district.

The statute provides that, where a district is organized embracing lands irrigated by an established irrigation system, and lands entitled to be served by an established irrigation system are not included in such district, the said land when admitted shall become

part of said district as if originally included therein and shall be entitled to water service upon an equal basis with the lands originally included in said district.     Acts 1917, p. 207, § 109, and now article 7766, R. C. S. 1925.     Section 110 of the Acts 1917, p. 207, and now article 7767, R. C. S. 1925, provides that:

"Where there is included in a district lands having a water right from a source of supply acquired by such district but which lands it is difficult or impracticable to irrigate, the said district may allow such water rights to be transferred to other lands adjacent to said district and may admit such lands to said district upon an equal basis as to water service with the lands originally included in such district."

Article 7555, R. C. S. 1925, provides that all persons who own or hold a possessory right to land adjoining or contiguous to any canal constructed and maintained under the provisions of this chapter, and who shall have secured a right to the use of water in said canal, shall be entitled to be supplied from such canal with water for irrigation of such land.

[3] The articles referred to have direct application to the facts of this case as pleaded. It follows, we think, that a contract among landowners in a water improvement district that prohibits, without legislative sanction, the transfer of water to other lands in the water improvement district, having similar water rights from a common source of supply, acquired by such district, but which lands it is difficult or impracticable to irrigate, as under article 7767, or, which, without legislative sanction, prohibits to persons who own a possessory right to lands adjoining or contiguous to a canal constructed and maintained under the provisions of the law regulating the use of water, and who have secured a water right to the use of water in the canal for irrigation of such lands, as under article 7555, such contract would be discriminatory against the rights of such lands, and could not be enforced.     As said in Edinburg Irr. Co. et al. v. Ledbetter et al. (Tex. Com. App.) 286 S. W. 185:

"As to all lands which are 'adjoining or contiguous' within the meaning of article 7555, the statute provides that the possessory owner's right to have water is an 'easement' which shall 'pass with the title.'     In our opinion the right thus denominated an 'easement' exists without regard to a contract between the irrigation company and the landowner, for it is declared (in article 7559) that the owner of 'adjoining or contiguous' land 'shall be entitled to the use of the water upon the terms provided in his or their contract.'"

[4] Corporations organized for public purposes cannot, by contract, render themselves incapable of performing their duties to the public, or in any way absolve themselves from an obligation which forms the main consideration for giving them a corporate existence, unless this be done by consent of the state.     Gulf, C. & S. F. Ry. Co. v. Morris, 67 Tex. 699, 4 S. W. 156; 44 L. R. A. 224; 30 Am. & Eng. Ency. Law (2d Ed.) 426; Bishop on Contracts, § 473.

[5, 6] The moment a water improvement district is organized its functions must be exercised in the interest of the public upon terms given under the law of its creation, and without discrimination.     The above is stated to be the rule independent of statutory enactments.     It follows, in view of the law as stated and the facts as pleaded, plaintiffs would not be entitled to recover damages by reason of the facts pleaded, nor would they be entitled to an injunction restraining the water district through its officers from furnishing Bihl and Rooney the water applied for to lands adjoining the district.     Gulf, C. & S. F. Ry. Co. v. Morris, supra.

As said by the Commission of Appeals, section A, speaking through Judge Nickels, in Edinburg Irr. Co. v. Ledbetter, supra, the statute which authorizes the organization of irrigation districts declares its corporate purpose to be that "'of conserving, storing, conducting and transferring water to all persons entitled to the use of same for irrigation,' etc.     Article 7552, R. S. 1925."

[7] We have concluded that a contract for water, to be performed under the law for the distribution of water, may not contravene the law, but must conform to the purposes and provisions of the law for water distribution.

Again, it might be said that the board created by the law with the functions given them is quasi judicial, its jurisdiction necessarily extending to deciding wrong as well as right, and court should not be disposed to substitute their findings for those of such bodies which, because of their familiarity with the conditions, and the necessity for action, are considered by the Legislature as especially capable of making decision, and for that reason are given the power of deciding finally and conclusively in matters over which they have jurisdiction to act. Glen v. Dallas County Bois D'Arc Island Levee Dist., 114 Tex. 325, 268 S. W. 452.

The suit is a direct attack against the irrigation improvement district and not a collateral attack as suggested by the defendants.

For reasons stated, we have concluded that the petition is subject to the general demurrer, and the court was not in error in so holding.

The case is affirmed.