WEEKES, McCARTHY & Co. ET AL. V. SUNSET BRICK AND TILE Co.

Decided February 23, 1900.

1. **Jurisdiction—Improper Joinder of Defendant.**

The joinder of a defendant against whom, under the facts proved, no cause of action is shown, will not give the court jurisdiction of the other defendants who are sued out of the county of their residence.

2. **Plea to Jurisdiction Waived.**

Where a plea to the jurisdiction of the court over the person was not presented until several terms after it was filed, and after several continuances of the case, it was waived by such delay. Rev. Stats., arts. 1268, 1291.

3. **Pleading—Allegation of Fraud.**

It is not a sufficient averment of fraud as a ground of jurisdiction to charge that a letter of credit given to a failing contractor was a cunningly devised scheme to induce other creditors to refrain from pressing their claims, and was not written in good faith, since this merely characterizes as fraudulent acts that are not inherently so.

4. **Contract—Letter of Guaranty.**

See the opinion for a letter of guaranty given to a contractor which, with other facts, is held not to create an equitable contract with a third person who, in alleged reliance thereon, furnished materials to such contractor.

APPEAL from De Witt. Tried below before Hon. JAMES C. WILSON.

*Davidson, Minor & Hawkins* and *J. A. Whitaker,* for appellants.

*Harwood & Walsh,* for appellee Sunset Brick and Tile Company.

*Proctors,* for appellee De Witt County.

GARRETT, CHIEF JUSTICE.—This action was brought May 14, 1896, by the Sunset Brick and Tile Company in the District Court of De Witt

County against De Witt County; A. O. Watson, a resident of Travis County; M. Clark & Co., a firm composed of M. Clark, Wright Cuney, and Joe Cuney; B. Blum & Co., a firm composed of B. Blum and Gustave Levy; Paul Shean, J. W. Byrnes, and R. B. Hawley, all of Galveston County, and the appellants, Weekes, McCarthy & Co., a firm composed of Nicholas Weekes and Ed. McCarthy, of Galveston County, and A. H. Pierce, of Wharton County, and Lawrence V. Elder, of Galveston County, for the recovery of the price of certain brick furnished by the appellee for the construction of the courthouse of De Witt County. Appellee recovered judgment against all of the defendants except De Witt County, which was discharged on demurrer. None of the defendants have appealed except Weekes, McCarthy & Co. The questions presented for the consideration of this court arise out of the assumption of the court below of jurisdiction over the persons of the appellants, and of the sufficiency of the petition and of the facts produced in evidence to show liability on the part of the appellants for the price of said brick.

In the year 1894 the county of De Witt entered into a contract with A. O. Watson for the erection of a courthouse, for which Watson was to receive the sum of $70,000 in the bonds of said county, to be delivered, $60,000 as the work progressed and $10,000 upon its completion. There was a stipulation in the contract that Watson would promptly pay off all labor and material bills as the work progressed, and that he would deliver the entire building at its completion to De Witt County free from all liens whatsoever, and that he would save the county harmless from all damages and costs by reason of liens or suits to establish liens. Watson gave a bond to secure the performance of the contract. With the consent of his sureties and of the county of De Witt, Watson sublet his contract to M. Clark & Co. for the sum of $64,000, to be paid in money as the bonds of the county were delivered to Watson. The defendants B. Blum & Co., Paul Shean, and J. W. Byrnes were the sureties for the performance of the contract of M. Clark & Co. Prior to the subletting of his contract Watson had negotiated with the appellee for the brick to be used in the construction of the building, and agreed with it upon the price to be paid therefor, and afterwards, upon the representation of Watson that, as authorized by the terms of his contract, he would see that its bills for the brick were paid, appellee entered into a contract with M. Clark & Co. for the delivery free on board cars at Cuero of 800,000 bricks, more or less, at $7.75 a thousand. All brick received up to that time were to be paid for within twelve days after the delivery of each installment of bonds to Watson.

When the first installment of bonds was delivered, M. Clark & Co. had received brick to the amount of $1863.42, and Watson paid to them the entire amount due them under his contract with them, without reserving the amount due the appellee, and M. Clark & Co. failed to pay it as they had agreed to do. Appellee notified M. Clark & Co. and Watson that unless the money was paid according to contract it would stop shipping brick and take legal steps to collect the amounts then due. So it was after-

wards agreed that Clark & Co. would draw their order on Watson whenever an installment of bonds was delivered for such amount as might be due the appellee by them, and that Watson would pay it, and that the amount then due should be retained by him and paid out of the next installment of bonds. M. Clark & Co. drew an order on Watson for the $1863.42, and it was paid upon the collection of the second installment, but the amount due for brick between the first and second installments was not paid, and when the building was nearly ready for the third installment of bonds the appellee held accepted orders on Watson for $3500 for brick previously delivered, and there was owing it for brick delivered and then in transit the further sum of $1328.25, all awaiting the payment of the third installment.

According to the contract for the construction of the building, twenty bonds for $1000 each were to be delivered to Watson when the third-story walls were finished ready for placing the ceiling beams, and balance of the contract price, to wit, ten bonds for the sum of $1000 each, were to be delivered upon the completion of the building and its acceptance by the county. Out of the third installment M. Clark & Co. would be entitled to receive from Watson the sum of $18,000 in money, and if they completed the building according to contract, they would be entitled to the sum of $10,000. The building was to be completed by January 1, 1895. By reason of delays in the prosecution of the work the building was not completed within the time mentioned in the contract. Time was extended by the Commissioners Court, and it being estimated that the building would be ready for the payment of the third installment of bonds by June 1, 1895, an order was made by the court fixing that date for the issuance of said installment. But the contractors failed to have the building ready by that time, and afterwards delayed the work until some time in September they became insolvent and ceased to prosecute the work.

In the meantime M. Clark & Co. had become indebted to Weekes, McCarthy & Co. in the sum of $11,500 for money loaned them, and for which the sureties upon the building bond of M. Clark & Co. and R. B. Hawley were indorsers. This loan was further secured by the acceptances of Watson to the amount of $7000. The sureties upon the bond of M. Clark & Co. and R. B. Hawley, in order to protect themselves from loss, procured for M. Clark & Co. an assignment of his contract to Lawrence V. Elder as trustee for them to complete the building. The Commissioners Court were willing to recognize the assignment to Elder and extend the time for the completion of the building and deliver the bonds, if the sureties of Watson would consent, and they could be assured that the building would be completed. T. F. Harwood had also prior to this been urging the payment of his claim by Clark & Co., and had secured the acceptance of Watson for $3500. He went to see Clark several times in Houston, and once in Galveston, about payment. The sureties of M. Clark & Co., in order to obtain money to enable their trustee Elder to complete the building, proposed to borrow it from Weekes, McCarthy & Co., and desired that they should place it with Runge & Co., bankers at

Cuero, subject to the check of Paul Helwig, the superintendent of the building. Weekes, McCarthy & Co. agreed to lend them not exceeding $10,000, upon the terms and security shown by the following written obligation of the sureties and letter of guaranty of Weekes, McCarthy & Co. to H. Runge & Co.:

"GALVESTON, TEXAS, September 25, 1895.
"Messrs. Weekes, McCarthy & Co.:

"We, the undersigned, as bondsmen and indorsers on the paper of M. Clark & Co., agree to bind ourselves to complete the Cuero courthouse at Cuero, Texas, De Witt County, each to pay their proportion of said liability, share and share alike, and here bind ourselves to meet the necessary expenses in doing so, and bind ourselves to Messrs. Weekes, McCarthy & Co. to pay all moneys advanced for the prosecution of this work, and thereby make Messrs. Weekes, McCarthy & Co. the agents through which all collections shall be made from the court of De Witt through A. O. Watson.

(Signed)     "R. B. HAWLEY,
             "J. W. BYRNES,
             "B. BLUM & Co.,
             "PAUL SHEAN.

"L. V. Elder is authorized to represent us in carrying out this agreement, in drawing and disbursing the necessary moneys to be used and received under its terms.

(Signed)     "J. W. BYRNES,
             "R. B. HAWLEY,
             "B. BLUM & Co.,
             "PAUL SHEAN."

"SEPTEMBER 25, 1895.
"Messrs. H. Runge & Co., Cuero, Texas:

"Referring to the inclosed copy of agreement and guaranty of bondsmen of M. Clark & Co., we desire to request of you that you cause the work on De Witt County courthouse to be continued until completed, for which purpose we hereby guarantee you to the extent of say ten thousand dollars, which we are informed will be more than is necessary to complete the building. You will please inform Mr. Helwig accordingly, that the work may be prosecuted and completed as early as practicable, and he will notify Mr. L. V. Elder here of amount from time to time for labor, etc., when instructions will be sent to you to honor his, Helwig's, checks in the usual way.

"We trust that upon this guaranty being given the county judge and commissioners will issue and turn over the bonds now due under the terms of A. O. Watson's order heretofore sent you, and by you delivered to the county judge.

(Signed)     "WEEKES, McCARTHY & Co."

A meeting of the Commissioners Court was called for October 3, 1895, to consider the demand of Watson for the issuance of the third installment of bonds. Watson had previously given an order on the court to Weekes, McCarthy & Co. for the delivery of the bonds to them. At this meeting the sureties of Watson were represented, and the trustee, Elder, and Harwood, the president of appellee company, were present. The county judge had procured from H. Runge & Co. the obligation and letter of guaranty sent to them by Weekes, McCarthy & Co. and presented them to the court. They were read and heard by those present and the guaranty was discussed. Elder stated in the meeting that arrangements had been made in Galveston to complete the building. That there was money in the bank of Weekes, McCarthy & Co. for the purpose, and that they had sent some money to Cuero. He stated that he had ample financial backing through the bondsmen of Clark and Weekes, McCarthy & Co. to enable him to complete the building, and that he thought it would be completed by January 1, 1896, but wanted an extra month to give him ample time. He said the $10,000 was not the limit he could spend on the building; that the $10,000 was to be expended at Cuero to pay labor, but that Weekes, McCarthy & Co. would provide money to pay for material and other bills at Galveston. The result of the meeting was that the sureties of Watson agreed to the delivery of the bonds to Watson at once, reserving $2000 until Elder should complete the third part of the work, and the court entered an order directing the bonds to be issued as of October 1, 1895. The bonds were delivered to Weekes, McCarthy & Co. upon the following order and receipt, to wit:

"GALVESTON, TEXAS, August 24, 1895.
"To the Hon. Edward Koenig, County Judge, and the Honorable Commissioners of De Witt County, Cuero, Texas:

"Gentlemen.——Oblige by delivering eighteen of the third series of bonds to Weekes, McCarthy & Co., Galveston, Texas, upon satisfactory completion of work under my contract (by M. Clark) for third payment, conditioned upon said Weekes, McCarthy & Co. paying upon delivery of bonds my acceptance of the Sunset Brick and Tile Company, about $3500 and interest, also acceptance to the Koken Iron Works, St. Louis, Mo., about $2300.25-100, no interest. The above to be receipted to you for as payment of said amount on my contract with De Witt County. Very truly,
"A. O. WATSON."

"GALVESTON, TEXAS, October 9, 1895.
"Received from the Hon. Ed Koenig, county judge of De Witt County, Texas, eighteen De Witt County courthouse bonds of one thousand dollars each, dated Cuero, Texas, October 1, 1895, and numbered respectively from No. 41 to 58 inclusive, as per order of Mr. A. O. Watson, on account of his (Watson's) contract with said county of De Witt. Said bonds to be forwarded to Milwaukee, Wis., and there to be delivered to the Northwestern Mutual Insurance Company upon payment of their par

value and accrued interest, and when so paid, proceeds thereof to be applied, first, to the payment of Mr. A. O. Watson's acceptance in favor of the Sunset Brick and Tile Company, Gonzales, Texas, for $3500 and interest, and the Koken Iron Works of St. Louis, Mo., $2392.35, and balance of proceeds to be placed to the credit of M. Clark & Co. minus the accrued interest of said bonds, which is to be remitted to the City National Bank of Austin, Texas, for credit of Mr. A. O. Watson.

"Signed in duplicate.

(Signed)   "WEEKES, McCARTHY & Co."

While the court, at its meeting on October 3d, was discussing the order it should draw up, Elder called Harwood aside and asked him if he had any brick on hand.   Harwood told him he was down there to see about pay for the brick already shipped.   Elder replied that he had been appointed trustee and would carry out the contract, stating that he had ample financial backing, and referred to the letter of Weekes, McCarthy & Co. read before the court.   He said, "We are willing to provide for your acceptance by Watson, but you must wait on the balance of it until the completion of the building."   Watson was present and urged witness to agree to the extension of the amount then to fall due on the issuance of the third installment of bonds.   Elder also said he wanted Harwood to continue to ship the balance of the brick necessary to complete the building.   Upon these representations Harwood agreed to the extension and afterwards shipped the balance of the brick, amounting to $620 in value, at the contract price between appellee and M. Clark & Co.

Elder resumed work on the building immediately after this meeting of the Commissioners Court and the delivery of the bonds, and continued work until December 17, 1895, when all work by him ceased; and after that the county declared the contract abandoned and took charge of and completed the building.   Appellee has never received payment for the amount due out of third installment, the payment of which it extended, nor for the brick furnished to Elder.   The acceptance of $3500 was paid by Weekes, McCarthy & Co. out of the proceeds of the eighteen bonds delivered to them on October 9, 1895.

On December 10, 1895, Weekes, McCarthy & Co. notified H. Runge & Co. that the amount of their guaranty had been exhausted, and that they could not pay further drafts until otherwise arranged.   No further arrangement was made with them, and they made no further advancements.   At this time they had paid for account of L. V. Elder, as trustee for the completion of the building, something over $10,000, but not all of it through H. Runge & Co. on the checks of Paul Helwig at Cuero. A part of it was paid at Galveston on the checks of Elder.   Of the money paid, $7150 was paid on drafts drawn by Helwig.

The cause was continued at the May term of the court for the want of service.   At the December term, to wit, December 16, 1896, Wheeler & Rhodes, as attorneys for the defendant, naming them all except De Witt

County and L. V. Elder, who had not then been brought into the suit, filed a pleading in which the defendants excepted and pleaded to the jurisdiction of the court that it appeared from the petition that the court was without jurisdiction to hear and determine the cause for the reason that none of the defendants were residents of De Witt County, etc., and pleaded further a general demurrer and general denial.   On December 22, 1896, the court granted leave to Wheeler & Rhodes to withdraw their answer, so far as it related to Weekes, McCarthy & Co., and allow Davidson & Minor and J. A. Whitaker to file an answer for them; and on the same day the defendants Weekes, McCarthy & Co. filed a plea by their attorneys in which (1) they excepted to the jurisdiction of the court over the persons of the defendants; (2) in abatement and of privilege to be sued in one of the counties of their respective residences, which was followed by pleas to the merits.   On January 25, 1897, at the same term of the court, the cause was continued by agreement, "without prejudice to either parties as to the pleadings filed."   At the June term, 1897, the case was continued by operation of law, and on February 8, 1898, it was continued for want of time to try same.

On June 13, 1898, the plaintiff filed its first amended original petition in which it alleged substantially that the letter of the defendants Weekes, McCarthy & Co. was planned and conceived for the purpose of securing the bonds to reimburse themselves for money advanced to M. Clark & Co. and to deceive De Witt County, the plaintiff and other creditors of M. Clark & Co. and induce them to refrain from pressing their claims and making collections, and that it was not written in good faith, but was a cunningly devised scheme, and was an open letter circulated in De Witt County to practice a deception on the plaintiff and other creditors.   It was sought to charge a fraud against Weekes, McCarthy & Co., committed in De Witt County.   On June 14th the court overruled the appellants' exceptions to the petition as to the jurisdiction of De Witt County over their persons, and sustained the demurrer of the plaintiff to their plea of privilege.   The court also sustained the demurrers of De Witt County to the petition, and the plaintiff declining to amend, De Witt County had judgment in its favor that it go hence without day.   Weekes, McCarthy & Co., by their attorney, asked for and obtained a continuance until the next term of the court to give them time to file an amended plea to the jurisdiction on the ground of surprise at the plaintiff's amended petition charging fraud in De Witt County and the absence of the persons composing their firm, no one being present who could swear to the plea.   At the next term, by leave of the court, an amended plea was filed by the appellants, which contained both exceptions and a plea to the jurisdiction, subject to which an answer to the merits was also filed.   The court overruled the appellant's exceptions and sustained the appellee's exceptions to their plea and ruled them to trial.

We think it quite clear that no cause of action was shown against De Witt County.   No lien was asserted against the courthouse for the brick furnished, and none could have been created.   Atascosa County v. Angus,

83 Texas, 202; City of Dallas v. Loonie, Id., 291.   Neither could there be any lien on the bonds of the county to be issued for the payment of the contract price of the courthouse, and none was claimed.   No cause of action having been shown against De Witt County, the fact that it was joined as a defendant in the suit could not confer jurisdiction over the persons of the appellants.   Railway v. Mangum, 68 Texas, 342.   The facts alleged with respect to the transaction by which the appellants guaranteed the payment of $10,000 for the completion of the courthouse do not show the commission of any fraud in De Witt County or elsewhere by them.   They show a bona fide effort on the part of the sureties of M. Clark & Co. to provide a fund for the purpose of carrying out the contract to save themselves from loss, and in consideration of the advancement of $10,000 to their trustee for that purpose by the appellants, an arrangement to secure them.   Nothing further is shown by the averments with respect to the action of the appellants than an agreement to advance money and an arrangement of security therefor.

Mere general averments characterizing an act as fraudulent do not make a good allegation of fraud.   The fraud must appear from the facts alleged, and the act must of itself appear to be fraudulent.   Baines v. Mensing 75 Texas, 200; Freeman v. Kuechler, 45 Texas, 492.   But it was the duty of the appellants to present their pleas to the jurisdiction of the court at the appearance term and demand action of the court thereon, else they will be considered as waived.   Rev. Stats., arts. 1268, 1269, 1291; Rules District Courts No. 24; Aldredge v. Webb, 92 Texas, 122; Blum v. Strong, 71 Texas, 328; Spencer v. Jones, 31 S. W. Rep., 542; Machinery Co. v. Smith, 44 S. W. Rep., 592; Bonart v. Lee, 46 S. W. Rep., 906; Postal Tel. Co. v. Railway, 40 S. W. Rep., 912.   It was not presented at the first term of the court, but there was an agreed order of that term that the cause should be continued without prejudice   At the next term of the court, however, orders were taken in the case by other parties and the order disposing of the case for the term that it was continued by operation of law shows no reason why the plea should not have been called to the attention of the court at that term and action had thereon.   At the next term the case was continued in a general order with others for want of time to try.   No reason is shown why the plea should not have been presented at this term.   When the appellee filed its amended original petition averring fraud as a ground of jurisdiction, we think the appellants had already waived their plea by reason of their failure to have it acted on before that time, and were in court on their answer to the merits.   As to the right to amend the plea and to have a continuance for that purpose, we do not decide.   While it is not deemed in furtherance of justice to allow a plea in abatement to be amended, it has been held that a plea to be sued in the county of one's residence is not a plea in abatement, but a meritorious one to secure substantial right, and if defective in form, is amendable.   1 Enc. Pl. and Prac., 519, note 5.   Here the amendment of the plea was made necessary by the appellee's amendment of its petition,

and none of the appellants being present, it would be necessary to delay the case if an amendment should be allowed.

As shown by the facts developed on the trial of the case, M. Clark & Co. had already become indebted to Weekes, McCarthy & Co. for the sum of $11,500 for money loaned them, for which they held in addition to the indorsement of R. B. Hawley and the sureties on the bond of M. Clark & Co., an acceptance of Watson for the sum of $7000 when M. Clark & Co. failed and the sureties made their proposal to them for the advancement of the $10,000. Appellants already had the order of Watson on the Commissioners Court for the delivery to them of $18,000 of the bonds out of the third installment, on condition that they would pay appellee Watson's acceptance of $3500 in its favor. So both the appellee and the appellants were mutually interested in having the work proceed and the bonds delivered, but there was no privity whatever between them, and the letter of guaranty was not addressed to H. Runge & Co. for the benefit of appellee, and, if it had been, was never accepted by it. When appellee agreed to extend the time for the payment of the money for the portion of the work then near completion, and to continue to supply brick to Elder, it did so no doubt with the belief that the building would be completed and that it would receive payment in full out of the final installment. Elder was not the agent of Weekes, McCarthy & Co. and had no authority to bind them by any representations as to their obligation to furnish all the money necessary to complete the contract. So Weekes, McCarthy & Co. did not become obligated by their letter of guaranty, or in any form of contract, to pay the money owing to the appellee. They only proposed to bind themselves, and were only bound to advance the sum of $10,000, which was to be paid on the checks of Paul Helwig, the superintendent of the work, for the completion of the building. It was clearly not to be paid for the past indebtedness of M. Clark & Co. Nor was anything in the contract to evidence any personal liability on the part of Weekes, McCarthy & Co. to the materialmen or laborers. Under the terms of their agreement with the sureties and their guaranty, the money could only be paid for the completion of the building. This was done to the full extent of the loan and of the guaranty.

Neither upon the allegations of the petition nor by the proof did the appellee show any cause of action against the appellants. They certainly were not bound upon an express contract. Appellee contends that out of the facts sprung an equitable contract, claiming that the letter of guaranty, though not addressed to it, was nevertheless intended to be acted on by it and to induce it to forbear to press the collection of its claims against M. Clark & Co. In support of this contention, 3 Pomeroy's Equity Jurisprudence, section 1294, is cited. We do not think the facts bring the case within the principle expounded by Mr. Pomeroy. There is nothing in them to show any intention to mislead or deceive. Appellee had no lien on the funds, and no cause of action could grow out of the fact that Weekes, McCarthy & Co. may have caused the bonds to be issued and delivered to them with the view of applying their proceeds

to the debts of M. Clark & Co. to them, although there may have been some fraudulent act on their part to secure the possession of the bonds. LeGierse v. Kellum, 66 Texas, 242; Adler v. Fenton, 24 How., 407; Lamb v. Stone, 11 Pick., 527; Bradley v. Fuller, 118 Mass., 239. For the reasons indicated, the judgment of the court below will be reversed and judgment will be here rendered in favor of the appellants.

*Reversed and rendered.*