PAUL et al. v. HOUSTON OIL CO. OF
TEXAS et al.
No. 2769.

Court of Civil Appeals of Texas. Waco.
April 1, 1948.

Rehearing Denied April 29, 1948.

Sidney P. Chandler, of Austin, Birkhead, Beckmann, Stanard, Vance & Wood, of San Antonio, and W. Glendon Roberts, of Bandera, for appellants.

Blades, Chiles, Moore & Kennerly, L. E. Frazier, Jr., and Fred W. Moore, all of Houston, W. B. Moss, of Sinton, Kleberg, Eckhardt, Mobley & Roberts, and Keys, Holt & Head, all of Corpus Christi, Perkins & Floyd, of Alice, and Paul A. McDermott, of Fort Worth, for appellees.

TIREY, Justice.

This is a suit in trespass to try title to 113.27 acres of land in San Patricio county and for an accounting for rents and for oil and gas produced from the land. In the alternative plaintiffs sue for damages in the sum of $1,500,000, plus the value of the produced minerals, and to establish a trust. George H. Paul claimed a one-half interest in the matters involved; the other one-half is claimed by his sons, Dwight H. Paul and Maurice H. Paul.

The original suit (No. 5630 and the cause on appeal) was one for partition filed (February 2, 1942) by Dwight H. Paul and Maurice H. Paul, in which they alleged that they owned an undivided one-half interest in the above tract and defendants therein named owned the other undivided one-half interest (stating the interest of each), and plaintiffs asked for a partition and an accounting.

The pleadings of all the parties exceed 900 pages. After the pleadings had been amended many times and various counter-claims and cross-actions filed, the court entered an order of severance (dated November 21, 1945 but filed February 23, 1946), which provided in part:

"* * * that any and all other allegations in other parts of said pleadings of plaintiffs and cross-plaintiff, which pertain to their said action for accounting and their suit pertaining to other lands than those originally sued for in this action, are hereby stricken and shall not be considered by this court in this case, at the cost of plaintiffs and cross-plaintiff and this suit shall be limited to a suit for the title and possession of * * * (113.27 acres), or any part thereof, and the rents and revenues therefrom, including the minerals produced from said land and any waste, or damage incurred by virtue of any wrongful and unlawful possession, ouster from, occupancy of, or use of said lands, to which action of the court plaintiffs and cross-plaintiff then and there in open court excepted."

The Pauls excepted to the order of the court but did replead. On the 9th of May 1947, the court sustained many exceptions urged by defendants to the pleadings of the Pauls and granted the motion of defendants to dismiss plaintiffs' cause of action because plaintiffs had elected not to amend, and plaintiffs have appealed.

The first question that presents itself is: (1) Did the trial court err in ordering a severance of the counter-claims filed by the Pauls wherein they answered the cross-action and counter-claim filed against George H. Paul by the defendants Houston Oil Company of Texas and the Corpus Christi National Bank and limiting the Pauls' relief in this suit to such claims as they may establish to the 113.27 acre tract; and (2) did the trial court err in his order dated May 9, 1947 and entered June 2, 1947, in which the court found in effect that the Pauls had wholly failed to comply with his order of severance, and further found that the plaintiffs had plead their title specially and that such pleadings, including the plaintiffs' exhibits, show that plaintiffs do not have good title to the land in controversy and dismissed plaintiffs' cause of action. The finding of the court to the effect that plaintiffs had plead their title specially and that the same shows that plaintiffs do not have good title to the land in controversy is a conclusion of law. We think the foregoing points are controlling on this appeal.

In considering these points we must examine first the pleadings of the parties on file on November 21, 1945. In so doing, we must look first to the second amended original petition of Dwight and Maurice Paul, filed January 24, 1945, which pleading tendered the issue of (1) title to an undivided one-half interest in and to the 113.27 acre tract of land; and (2) for an

accounting of the rents and revenues, and in this connection they alleged substantially that their net one-half interest for the oil and gas was the sum of $350,000, as of the date they filed such pleading on January 24, 1945, for legal interest and for one-half of the market value of all the oil produced by defendants subsequent to the filing of this pleading. They also alleged that defendants owned no interest in the 113.27 acre tract of land, and that the other one-half interest was owned by their father, George H. Paul. These issues were raised by a formal action in trespass to try title.

Because the Houston Oil Company and the Bank brought George H. Paul into the case on their respective cross-actions and injected the claims of George H. Paul and the right of said Oil Company and Bank to assert their defensive claims to the counter-claims of George H. Paul and their defenses against the claims of Dwight and Maurice Paul, we look next to the issues tendered by their pleadings. The pleading of the Houston Oil Company filed May 9, 1945, and refiled November 21, 1945, tendered the following issues: It interposed a general denial to the pleadings of the Pauls and a plea of not guilty; that it had no notice of any claim of the Pauls until January, 1942, and that George H. Paul had ratified and confirmed the deed of Fred H. Smith to the Bank and that it was an innocent purchaser of the property; the issue of estoppel based upon the deed dated July 15, 1913, executed by Fred H. Smith, attorney-in-fact for George H. Paul, which deed Paul ratified and confirmed by deed dated November 20, 1923, and that Paul and his sons made no claim to the property and gave no notice of their claims to the defendant or anyone else from March 2, 1918 until 1942; that the Pauls acquiesced in defendant's development and use of said property and allowed defendant to drill wells and place valuable improvements thereon and greatly enhance its value by producing oil and gas therefrom without giving any notice of their claim to defendant; that George H. Paul knew that his agent, Fred H. Smith, had conveyed the property to the Bank and Paul knew he had no interest therein at the time he executed the deed of 1923; that Fred H.

Smith and other agents of Paul in Texas had conveyed all of Paul's interest in said real estate to meet Paul's obligations existing in Texas and that Paul had abandoned said property and recognized the fact that for a period of thirty years he had had no title. It further tendered the defenses of laches, stale demand and our three, four, five, ten and twenty-five year statutes of limitation, Vernon's Ann.Civ.St. Arts. 5507, 5509, 5519, 5523a, 5527; that all of the claims of Dwight and Maurice Paul and their father for an accounting was barred by Art. 5526, Vernon's Ann. Civ. Stats.; that at the time of the execution of the deed of November 1923, Paul was acting as survivor of the community estate of himself and wife and was possessed of real and personal property sufficient to vest in his children one-half of the community estate owned by their mother at the time of her death, and George H. Paul effected an equitable partition by executing said confirmation deed in 1923 to the Bank, which vested in the Bank a good and sufficient title to the property; that at the time George H. Paul was a co-tenant with his sons and said confirmation deed did not injure or damage his co-tenants in anywise because George H. Paul had in his hands as survivor of the community a sufficient amount of property constituting a part of the community estate of himself and deceased wife so that said children did get their proper share or interest which they had inherited from their mother; that the value of the property remaining in the hands of George H. Paul, after the execution of the deed in 1923, was far in excess of the value of the property conveyed by said deed and any other property conveyed or transferred by George H. Paul "out of the community estate of himself and wife subsequent to her death in 1918 but prior to the execution of said deed in 1923."

The defendant Corpus Christi National Bank in its fourth amended original answer filed November 8, 1945 and refiled November 21, 1945, pertinent to this discussion tendered substantially all of the defensive issues alleged by the pleading of the Houston Oil Company. The Bank's pleading tendered this additional issue: That the deed executed and delivered by

Fred H. Smith to the Bank in 1913 and the confirmation deed made by George H. Paul in 1923 were executed and delivered for the purpose of paying a lawful balance due on a community debt in an amount in excess of $31,000, which debt originally represented a loan made to George H. Paul by the Bank; that the obligation was a charge against the properties of George H. Paul and his wife at the time of the execution and delivery of the deed in 1913 and at the time of the execution of the deed in 1923; and at the time George H. Paul executed said confirmation deed he was acting as survivor of the community, discharging a community obligation, and that the community estate received full value and consideration for the conveyance, and that by reason thereof said conveyance cannot be set aside or question by the Pauls.

The pleadings of the other defendants assert substantially the same defenses as the Oil Company and the Bank.

George H. Paul pleaded a general denial and plea of not guilty to each of the cross-actions filed against him. He also pleaded in detail the limited authority of Fred H. Smith with the Corpus Christi National Bank, which tendered the following issues: That Smith had no authority to execute the deed of July 15, 1913, and there was no consideration for such deed and no consideration for the deed of November 20, 1923; that the property in suit was the community property of himself and Eva J. Paul, who died in 1918; that he and his sons were the sole survivors and heirs at law of Eva J. Paul, and that one-half of the property was his and the other one-half belonged to his sons; that the deed dated November 1923 was obtained by misrepresentations and fraud on the part of the Bank, and that the Bank had actual notice and the Houston Oil Company and all other defendants had constructive notice thereof; that he did not execute the deed of November 1923 as community survivor of himself and wife; that the defendant Bank, by virtue of its fraudulent conduct, caused more than 941 acres of the community land of himself and wife situated in San Patricio County to be placed beyond the reach of himself and his sons (except the 113.27 acre tract), and that by virtue

of the sale thereof to innocent third parties that the Bank had placed him in such position that the laws of limitation barred him and his sons to recover the title and possession of such lands, and that under the facts and circumstances the Bank is a trustee of the value of said lands, together with the rents and revenues, and that it should be required to account therefor; that George H. Paul knew nothing of such fraudulent or wrongful conduct until within less than two years prior to the filing of this suit, and that he and his sons are entitled to recover "the title and possession of the land described in plaintiffs' second amended original petition, and the values of other lands which cannot be accounted for in the specie, which market value the defendant says is $1,035,000.00, and in addition to which this defendant says he and his two sons are entitled to recover the market value of the rents and revenues of said lands to the date of any alleged sale thereof by said Bank, with interest thereon at the rate of six per cent per annum."

We must now consider the second amended first supplemental petition of Dwight and Maurice Paul filed November 21, 1945. This pleading contained twenty-four pages and pleaded substantially the facts alleged by George H. Paul in his first amended original answer and cross-action and further specially plead that at the time Eva J. Paul died in March 1918, she and her husband resided in Washington county, Iowa and that her husband was not acting under the statutes of Texas as community survivor, nor did he attempt to act as survivor of the community when he executed the deed in November 1923; and that such deed was only a quit-claim deed; that plaintiffs and their father do own the land described in an affidavit made by George H. Paul, dated January 8, 1942 (which described various tracts of land and was recorded in Nueces County), and that said Bank has placed the title to said land beyond the reach of these plaintiffs and George H. Paul, or has had the title to said land so clouded that it would require a multiplicity of expensive law suits to attempt to recover the title and possession of said land, and these plaintiffs elect to require the defendants in this suit to account to them and

their father for the value of all of said land at the trial of this case, which market value of all of said land is $1,035,100. The pleading further set out the details whereby their father became indebted to the Bank and various other persons and how these debts were secured by deed of trust liens on property in Nueces and San Patricio counties, and that the final result of their father's transactions with the Bank was that the Bank, by means of fraud, caused some 2800 acres of plaintiff's land in Nueces county to be conveyed to one Driscoll and other parties whom they did not know and placed beyond their reach, and likewise caused approximately 941 acres of land to be sold in San Patricio county and placed beyond their reach and they gave the names of ten separate vendees, giving the dates of each deed and the place where recorded in the County Clerk's office in San Patricio county. These transactions occurred between May 1920 and July 1925.

The pleadings of the Pauls brought into this suit numerous conveyances of other lands which were not in anywise related to the conveyance of the 113.27 acre tract which was the sole tract involved in plaintiff's cause of action originally filed. The Houston Oil Company and the other defendants were strangers to these transactions that the Bank had with Paul and other parties. Needless to say they are complicated and involved and would unduly delay and burden the trial of a formal action in trespass to try title to the 113.27 acre tract, so we reach the first major question on this appeal and that is: Did the trial court abuse his discretion when he granted defendants' motion to sever from this suit the cross-actions and cross-complaints of the Pauls against the Bank insofar as such claims affected the other lands referred to in plaintiffs' pleadings, save and except the 113.27 acre tract? We think not.

Rule 174, sec. (b), Texas Rules Civil Procedure provides:

"(b) Separate Trials. The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

See also Rules 40 and 41, T.R.C.P.

Succinctly stated, the order of severance of the trial court severed the present suit for title to the 113.27 acres of land (and an accounting for rents and revenues) from the alleged cause of action against the Bank for alleged conversion of some 2800 acres of land situated in Nueces county and other lands situated in San Patricio county and an accounting therefor, which action was based on an alleged unauthorized sale by the Bank of such Nueces county lands. Under the pleadings the alleged sale of the Nueces county lands took place some two years after the sale of the 113.27 acres of land to the Bank by Paul, through his attorney-in-fact, Fred H. Smith. The sale of the land in Nueces county was under the usual power of sale contained in the deed of trust, whereas the sale of the 113.27 acre tract to the Bank was by Paul, acting through his attorney-in-fact. It is obvious that the two suits arose out of and were predicated upon a different state of facts and were clearly separate causes of action. The cause of action here under consideration is to recover the interest, title and possession of the 113.27 acres under the allegations that each of the defendants own separate interests in this tract. The cause of action the court severed attempts to allege the conversion of said Nueces county lands, and resulting accounting therefor, on the part of the bank alone, without alleging any facts which would in any way connect any of the other defendants with the transactions, either jointly or severally. The Houston Oil Company purchased the 113.27 acres in 1927. "The general rule is that causes of action based on distinct subject matters and enforceable against different defendants or against a single defendant in different capacities may not be joined. * * * The right to join causes of action is said to depend on whether the court can grant full relief under the particular circumstances involved and whether the diverse nature of the defenses which would naturally be interposed to the various causes of action would suggest the propriety of

keeping them apart." 1 Tex.Jur. 644, 645. In this connection we think the Houston Oil Company and the other defendants were entitled to a trial with reference to the question of title to the 113.27 acre tract irrespective of Paul's claim against the Bank for fraud and failure of the Bank to give proper credit for the payments he may have made to the Bank in that period of time extending from December 1910 to September 1915.

In Meridith v. Massie, Tex.Civ.App., 173 S.W.2d 799, 800, writ refused, the trial court concluded that the issue of limitation would dispose of all the questions in that case and severed that issue from the other issues in the case and tried it separately. Plaintiff appealed from an adverse judgment and the appellate court affirmed the lower court's decision and said: "The appellant further assigns as error the action of the court in conducting a separate trial on the issue of limitations and thus refusing to go into the merits of the damage suit or the bill of review. While this is apparently a new procedure in Texas, under Rule 174, T.R.C.P., we think it is within the sound discretion of the trial court to order separate trials on issues like these, which are determinative of the entire case. It seems to us that such procedure is not only permissible, but should be encouraged as commendable and expedient practice in cases like this * * *." See cases therein cited.

■■ In 1 C.J. 1072, we find this general rule, which has been followed by our courts: "In order that causes of action against several defendants may be joined, they must each affect all of the defendants. Distinct causes of action against different defendants cannot be joined, although in favor of the same plaintiff, nor can a cause of action upon which defendants are jointly liable be joined with one upon which one of the defendants alone is liable." See also 1 C.J.S., Actions, § 76; Tunstill v. Scott, 138 Tex. 425, 160 S.W.2d 65; Wilson v. Ammann & Jordan, Tex.Civ.App., 163 S.W.2d 660, writ dismissed; Rose v. Baker, 143 Tex. 202, 183 S.W.2d 438. It is clear that under the new rules it was the intent to give to the trial courts authority to exercise their sound discretion with reference to the severance or consolidation of causes of ac-tion. It is true that an appellate court has authority to review matters that involve the exercise of discretion by our trial judges, but it is equally true that our appellate courts will not reverse causes on the ground that the trial court abused its discretion in some matter unless it is made clear to the appellate court that such discretion was abused to the prejudice of the complaining party. We have considered the pleadings of the parties on file at the time the order of severance was made by the trial court and we think that he wisely severed Pauls' counter-claims against the Bank for the other tracts of land, and the Pauls suffered no injury therefrom. In fact, we think that such order of severance helped to simplify their claim to the 113.27 acre tract.

■ Did the trial court err in his order dated May 9, 1947 and entered June 2, 1947, in which the court found in effect that the Pauls had failed and refused to comply with his order of severance, and further found that the plaintiffs had plead their title specially, and that such pleadings, including the plaintiffs' exhibits, show that plaintiffs do not have good title to the land in controversy and dismissed plaintiffs' cause of action? We think not. When this order of dismissal was entered the plaintiffs had on file under one cover the second amended original petition after severance of George H. Paul and the fourth amended original petition of Dwight and Maurice Paul. This pleading filed February 24, 1947 covered twenty-eight pages of the transcript and attached to it are seventeen exhibits which cover eighty-five pages. The first five paragraphs of the above pleading is in effect a formal action in trespass to try title.

Paragraph 6 of said pleading is: "Pleading solely in the alternative, plaintiffs say that all of the defendants, other than the defendant Houston Oil Company of Texas, who have received any of said oil, gas or other minerals, or their market value thereof, were not entitled to receive same, or any part thereof, and that by reason of such facts, as hereinbefore alleged, these plaintiffs are at least entitled to recover of and from said defendants, other than Houston Oil Company of Texas and the Sinclair-Prairie Oil Company, the market value of the oil and gas received by said defendants

since the beginning of production of oil and gas from said premises in September 1939, and plaintiffs say that said defendants have received as of March 1947, $180,000.00, and that said defendants are now receiving and will continue to receive $2000.00 per month after March 1, 1947, which amount depends upon the daily allowable for production of said wells as set by the Railroad Commission of Texas, all of which the plaintiffs are entitled to recover from all the defendants other than Houston Oil Company of Texas and Sinclair Prairie Oil Company of Texas."

The remainder of the pleading then details the history of a complicated series of transactions between George H. Paul and the Bank between the years 1910 and 1915, wherein plaintiffs allege that George H. Paul acquired 2800 acres of land in Nueces county during said period of time. They attached to this pleading exhibits showing various deeds, deeds of trust and other title papers relating to these transactions. It further details how George H. Paul acquired approximately 1000 acres of land in San Patricio county, out of which the 113.27 acre tract is a part, and they attached exhibits relating to the chain of title to the San Patricio lands. They further allege that defendant Bank, by virtue of fraud practiced on George H. Paul, has placed the title to all of the respective tracts beyond their reach, except the 113.27 acres, but they allege the value of the land placed beyond their reach to be of the value of $1,500,000.

It is clear that the dealings George H. Paul had with the Bank from the years 1910 to 1915, relating to lands in Nueces county, are wholly unrelated and immaterial to the claimed cause of action that plaintiffs are asserting with reference to the 113.27 acre tract. Nor do plaintiffs' asserted claims for the conveyance of approximately 1000 arces of Paul's land in San Patricio county throw any light upon their claims for the 113.27 acre tract. The only transaction that Paul had with the Bank that is material to the title and claims arising out of the sale of the 113.27 acres are the facts and circumstances connected with his execution of the 1923 deed. The order of severance provides in effect that the plaintiffs shall have the right of establishing such claims as they may have against the Bank for the sale of all of the other lands in Cause No. 5630-A, and at the same time affords the plaintiffs the opportunity of establishing their claims arising from the sale of the 113.27 acre tract. Our view is that the pleadings of the Pauls under consideration wholly failed to comply with the order of severance entered by the court.

Did the court err in concluding in effect as a matter of law that plaintiffs had specially plead their title and in so doing they had not plead a cause of action, and having refused to amend, it was the duty of the trial court to dismiss the suit for such reason? We think not.

In Paragraph 26 of appellants' pleadings they alleged in part: "Plaintiffs say that all the instruments described in this amended petition appear of record in the Deed Records of San Patricio County, Texas, and the defendants base their claim of right upon those instruments described in Paragraph 14 hereof and all of the subsequent paragraphs in this petition; that said instruments were of record, and the defendants, and each of them, had actual knowledge of the existence of said instruments and of their contents, limitations, and provisions, by reason of the fact that for the Houston Oil Company of Texas one W. H. Blades, an attorney and officer of said defendants, examined the title on the land involved in this suit, and in doing so, prior to taking any alleged deed to said land, found existing in the record each and all of said instruments herein described, and did for the said Houston Oil Company of Texas, as its attorney and agent, acquire actual knowledge of the limitations, invalidity and want of title as exhibited by said instruments described from Paragraph 14 of this petition throughout the remainder hereof; that the same is true as to all the other defendants excepting the Corpus Christi National Bank, which defendant had actual knowledge of the instruments herein described by reason of the facts as hereinbefore alleged."

The effect of the foregoing allegation is that the attorney for the defendant Houston Oil Company examined the title to the land and had notice of the instruments

above referred to. None of the above instruments give any indication of fraud. Each is regular on its face except that it appears from the record that Paul had given authority to Smith, his agent, to borrow money and mortgage property as security and that Smith had exceeded his authority by the execution and delivery of the warranty deed dated July 15, 1913, which transaction Paul later confirmed and ratified by the special warranty deed dated November 20, 1923. The deed of trust liens referred to in appellants' brief were released and there is no indication from either of the deeds of trust or releases that the Bank was guilty of fraud. We have considered most carefully the allegations in appellants' pleadings and they allege nothing more than constructive notice of instruments of record in the chain of title to the property in question that are regular on their face.

█ We think it pertinent to observe here that the exhibits attached to plaintiffs' pleading show that the property was conveyed to George H. Paul without mention of the nature of the property or his wife, and that the deed to him recited that it was conveyed to "George H. Paul of the County of Washington, State of Iowa." The 1923 deed recited "That I, George H. Paul, County of Polk, State of Iowa." In each of the other exhibits where Paul's name appears, he is referred to as "George H. Paul of the County of Washington, State of Iowa." The Pauls specifically alleged that George H. Paul and wife were residents of Washington County, State of Iowa, at the time of Mrs. Paul's death, and that Paul was not acting as community survivor under the laws of the State of Texas at the time he executed the 1923 deed. Moreover, their pleadings nowhere alleged that at the time of the execution of the confirmation deed that Paul or his sons advised the Bank of the death of Eva J. Paul, or of any equitable claim the sons may have had through their mother in the community property. Absent fraud in the transaction as between George H. Paul and the defendant Bank in respect to the procurement of the 1923 deed and notice of the death of the wife of George H. Paul and claims of his sons, Dwight and Maurice Paul, which were not alleged, George H.

Paul, as community survivor, conveyed the equitable interests of his sons who had inherited through their mother such interests. Franzetti v. Franzetti, Tex.Civ. App., 124 S.W.2d 195, writ refused; Snyder v. Nunn, 66 Tex. 255, 18 S.W. 340; Ulmer v. Ulmer, 139 Tex. 326, 162 S.W.2d 944; Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196; Strong v. Strong, Tex.Civ.App., 66 S.W.2d 751, affirmed 128 Tex. 470, 98 S.W.2d 346, 109 A.L.R. 739; Patty v. Middleton, 82 Tex. 586, 17 S.W. 909; Mitchell v. Schofield, 106 Tex. 512, 171 S.W. 1121; Howard v. Zimpelman, Tex.Sup., 14 S.W. 59; 43 Tex.Jur. 689.

█ But appellants say that since they alleged in effect that the exhibits attached to their pleading were for the purpose of showing their invalidity and for no other purpose, that they have not plead their title specially. We cannot agree with this contention. We have previously quoted from their pleadings wherein they said that they did rely on such instruments. Moreover, the exhibits attached show that they were duly executed and acknowledged and recorded and appellants' allegations to the effect that they were invalid is a mere conclusion of the pleader. "The rule is that when the exhibit is referred to in pleading, and its inspection shows facts contradictory to the pleading, in considering the pleading on demurrer, the exhibit, and not the allegation in the pleading, must control." Reeves v. Pecos County Water Improvement District, Tex.Civ.App., 293 S.W. 923, 930, reversed on other grounds Tex.Com.App., 299 S.W. 224; Tex.Com. App., 7 S.W.2d 67. See also Freiberg, Kline Co. v. Magale, 70 Tex. 116, 7 S.W. 684; Wineinger v. Farmers' & Stockmen L. & I. Ass'n, Tex.Civ.App., 278 S.W. 932; Hecht v. Weissenberger, Tex.Civ.App., 49 S.W. 872; Lewis v. Pittman, Tex.Civ.App., 191 S.W.2d 691. Our view is that the pleadings of all the parties primarily confine the issues relating to the 113.27 acre tract to the legal effect of Paul's deed dated November 1923. Franzetti v. Franzetti, supra. Since the appellants plead their title, their petition must be tested as to its sufficiency by the title specifically plead. See Ulmer v. Ulmer, 139 Tex. 326, 162 S.

354

W.2d 944, and authorities there cited. Appellants having plead their title, it was proper for the court to determine on exception whether the facts pleaded gave title. See McDonald v. Red River County Bank, 74 Tex. 539, 12 S.W. 235; Snyder v. Nunn, 66 Tex. 255, 18 S.W. 340; Gatewood v. Graves, Tex.Civ.App., 241 S.W. 264; Gann v. Putman, Tex.Civ.App., 141 S.W.2d 758; 41 Tex.Jur. 562. Since the court found in effect, as a matter of law, that appellants' pleading failed to allege actionable fraud in obtaining the execution and delivery of the 1923 deed, the legal effect of the instrument was for the court.

But appellants contend that the 1923 deed executed by Paul was obtained by means of fraudulent representations and was nothing more than a quit-claim deed. They set out a letter written by a Title Company to Paul and a telegram from it as their basis for alleging fraud. We quote the letter and the telegram. The pertinent parts of the letter are as follows:

"We are herewith enclosing a confirmation deed from you to the Corpus Christi National Bank, also our voucher in the sum of $2.50, covering acknowledgment fees, etc. We are getting this confirmation deed to overcome the point raised by an opinion of Mr. Smith deeding this land to the Corpus Christi National Bank under the power of attorney which was executed and filed for record in San Patricio County. There were powers of attorney filed for record in Nueces County, Texas, authorizing Mr. Smith to execute such deeds, but the one placed of record in San Patricio County, was not in due form, so we have been requested to secure this from you.

"The deed referred to in the instrument recorded in Vol. 49, page 163 of the Deed Records of San Patricio County, recites a consideration of $31,000.00 cash in hand paid. My opinion from the record is, this deed was given to take up indebtedness, which you owed the Corpus Christi National Bank at that time, as the records show deeds of trust which amount to in the neighborhood of $30,000.00. This incident is more familiar to your mind than it is mine, so I hardly consider I will have to make much of an explanation, as I feel sure you can recall the transaction with the Corpus Christi National Bank.

"Trusting you will give this matter your usual prompt attention, and thanking you to return the deed to us at your very earliest convenience, we remain * * *."

The telegram reads as follows:

"November sixth we mailed you ratification instrument connection various tracts sold by you Corpus Christi National Bank through your agent Fred Smith. Party to whom Bank sold one of these tracts has application pending for loan and anxious get matters closed. Please rush execution instrument. Wire collect when mailed."

The court held in effect that fraud was not alleged. Bearing in mind that the alleged transactions that Paul had with the Corpus Christi National Bank occurred between 1910 and 1915, and that the deed executed by Smith to the Bank was in 1913, and keeping in mind that this request to Paul to execute this "confirmation deed" came to him some ten years after the execution and delivery of the 1913 deed, we think it is obvious that the letter and the telegram and the contents of the 1923 deed (specially pleaded, being Exhibit No. 17) purported only to set at rest the question of the title to 1054.4 acres of land conveyed by the 1913 deed. (The 113.27 acre tract is out of the 1054.4 acres conveyed by the 1913 and 1923 deeds.) All allegations to the contrary are conclusions of the pleader and are contrary to the terms of the instruments expressly plead. Viewing the representations in the letter in their entirety, we do not think that actionable fraud as a matter of law can be predicated thereon. See Braxton v. Haney, Tex.Civ.App., 82 S.W.2d 984, writ refused; 37 C.J.S., Fraud § 10, pp. 226, 227; Huffmaster v. Toland, Tex.Civ.App., 250 S.W. 468, point page 470. Since the Pauls are claiming fraud concerning statements made with reference to title to their property and since the records relating to such title were open for their inspection, we think that they are precluded under the doctrine announced in Sherman v. Sipper, 137 Tex. 85, 152 S.W.2d 319, point page 321, 137 A.L.R. 263. It is true the letter from the Title Company and the telegram did not appear in the chain of title, but the 1923 deed did.

We think the trial court did not err in holding in effect as a matter of law that plaintiffs' pleadings had not alleged fraud within the rule announced by the Supreme Court in the case of Baines v. Mensing, 75 Tex. 200, 12 S.W. 984. See also Weekes v. Sunset Brick & Tile Co., 22 Tex.Civ.App. 556, 56 S.W. 243; Shaffer v. Brown, Tex. Civ.App., 59 S.W.2d 854; Ostrom v. Jackson, Tex.Civ.App., 127 S.W.2d 987; Dysart v. Flemister, Tex.Civ.App., 140 S.W. 2d 350, writ refused; Magnolia Petroleum Co. v. Page, Tex.Civ.App., 141 S.W.2d 691, writ refused; Hendrix v. Nunn, 46 Tex. 141; Kelley v. Wright, Tex.Civ.App., 184 S.W.2d 649, affirmed Kelly v. Wright, 144 Tex. 114, 188 S.W.2d 983; 20 Tex.Jur., Fraud, 134, 135. Believing that no issue of actionable fraud was raised by the pleadings with reference to obtaining the 1923 deed from George H. Paul, and since the pleadings did not raise the issue of accident or mistake concerning the procurement of such deed, the construction of the instrument was a matter for the court. Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172, point 1. Our view is that the trial court did not err in concluding in effect, as a matter of law, that the deed of 1923 was a special warranty deed and that it ratified and confirmed the 1913 deed executed by Paul's agent Smith and that the 1923 deed was not a quit-claim deed.

Did the deed of November 1923 convey the land? We think it did.

The pertinent parts of the 1923 deed are as follows:

"Know All Men by These Presents: That I, Geo. H. Paul, of the County of Polk, State of Iowa, for and in consideration of the sum of One (1.00) Dollar to me in hand paid, the receipt of which is hereby acknowledged, and the further consideration of ratifying and confirming the acts of Fred H. Smith, acting as my said attorney in the conveyance to the Corpus Christi National Bank of Corpus Christi, Texas, various and sundry lots hereinafter described, by deed dated July 15, 1913, recorded in Vol. 49, Page 163 of the Deed Records of San Patricio County, Texas, do hereby and by these presents fully and absolutely ratify and confirm said deed and conveyance so made by the said Fred H.

Smith, as my agent and attorney in fact, as aforesaid, as to the property hereinafter described, and I do hereby grant, sell, convey and quitclaim unto the said Corpus Christi National Bank of Corpus Christi, County of Nueces, and State of Texas, all that certain real estate situated in San Patricio County, Texas, more particularly described as follows, to-wit:

(Here follows the description of the 1054.4 acres of land described in the 1913 deed)

"To Have and to Hold unto the said The Corpus Christi National Bank, and to such and all person or persons or to whom its assigns or vendees may have sold and conveyed the same, or any part thereof, and unto the present owner and holder thereof, all the right, title and claim of myself therein, as fully, completely and absolutely as though I had personally executed and delivered said deed to the said The Corpus Christi National Bank of Corpus Christi, Texas, together with all and singular the rights, privileges and appurtenances thereto in anywise belonging unto the said The Corpus Christi National Bank, or its assigns whatsoever, so that neither I, the said Geo. H. Paul, nor my heirs, or any person or persons claiming under me, shall hereafter claim the aforesaid premises or appurtenances, or any part thereof."

The granting clause of the deed provides: "I do hereby grant, sell, convey and quitclaim unto the said Corpus Christi National Bank of Corpus Christi, County of Nueces and State of Texas, all that real estate situated in San Patricio County, Texas, more particularly described as follows, to-wit: * * *." It then specifically describes 1054.4 acres of land in San Patricio County and the description is the same as that in the deed of July 15, 1913. Reading the deed in its entirety, we think it is inescapable that Paul was conveying all of the above real estate. In this deed he confirmed Smith's conveyance with the same force and effect as if he had executed the original conveyance. The granting and conveying clause conveys the land here involved and the deed further provides that Paul is conveying the same right, title and interest which he could have conveyed when the original deed was executed and

delivered. Under the pleadings there is no question but that Paul had the legal title when the deed dated July 15, 1913, was executed and delivered. Burnham v. Hardy Oil Corporation, 108 Tex. 555, 195 S.W. 1139. The recitations in the 1923 deed are clear that it was his intention to ratify and confirm the 1913 deed and to convey the land and not merely whatever right or title he had in November 1923. The habendum clause in the deed clearly states that he is executing the deed not only to the Bank but "to such and all person or persons or to whom its assigns or vendees may have sold and conveyed the same, or any part thereof, and unto the present owner and holder thereof * * *." The above clause is the recognition of this ratification deed for all interested parties and subsequent purchasers. The habendum clause further expressly states that it vests in the Bank and its assignees or vendees and to the present owner and holder thereof "all the right, title and claim of myself therein, as fully, completely and absolutely as though I had personally executed and delivered said deed to the said The Corpus Christi National Bank of Corpus Christi, Texas * * *." It is true that this deed contains a special warranty but under the great weight of authority, such special warranty does not carry any notice of defects of title to the grantee. The rule is: "So, too, a 'special warranty deed'—that is to say, one that is in terms a general warranty deed except that it warrants the title only against those claiming 'by, through or under' the grantor—conveys the land itself; the limited warranty does not, of itself, carry notice of defects of title." 14 Tex.Jur. 977. See also Crow v. Van Ness, Tex.Civ.App., 232 S.W. 539; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 94; Richardson v. Levi, 67 Tex. 359, 3 S.W. 444; Davidson v. Ryle, 103 Tex. 209, 124 S.W. 616, 619, 125 S.W. 881; Johnson v. Marti, Tex.Civ.App., 214 S.W. 726, writ refused; Huling v. Moore, Tex.Civ.App., 194 S.W. 188.

 It was the duty of the trial court to construe the 1923 deed. In so doing he was bound by the rules of construction heretofore announced by our Supreme Court:

"The governing rule in the construction of written instruments is, 'that every part of the instrument should be harmonized and given effect to if it can be done.' Hancock v. Butler, 21 Tex. [804], 806. But this rule does not demand that every part of the deed shall be treated as of equal weight in the solution of every question that may arise. 'The habendum may be entirely rejected if repugnant to the other clauses of the conveyance.' Devl. Deeds, § 213." See Moore v. City of Waco, 85 Tex. 206, 20 S.W. 61, 63.

 "The dominant purpose in construing a deed is to ascertain the intention of the parties as expressed in the deed itself; and such intention expressed therein is a controlling factor. Totton v. Smith, [131 Tex. 219], 113 S.W.2d 517, and cases cited. If there be doubt as to what the intention of the parties was, due to the language of the deed, such doubt should be resolved against the grantor. Curdy v. Stafford, 88 Tex. 120, 30 S.W. 551; 14 Tex. Jur. 916, § 138; 18 C.J. 263, § 219. * * * The intention of the parties must be gathered from the entire instrument, and not from some isolated clause or paragraph. The entire instrument must be construed as a whole in order to arrive at the intention of the parties." See Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172, 1174.

Applying the foregoing rules to the provisions of the 1923 deed, it is clear to us that Paul intended to convey and transfer the full title which he held in 1913, and that the trial court did not err in so concluding. See also Roswurm v. Sinclair Prairie Oil Co., Tex.Civ.App., 181 S.W.2d 736, points 14, 15, and 16, writ refused W. M., and authorities there cited; Richardson v. Levi, 67 Tex. 359, 3 S.W. 444; Cook v. Smith, 107 Tex. 119, 174 S.W. 1094, 3 A.L.R. 940.

Since the trial court concluded in effect, as a matter of law, that appellants had plead their title, and found in effect, as a matter of law, that the 1923 deed was a special warranty and conveyed the property, and appellants having elected not to amend, we think it was his duty to dismiss appellants' asserted cause of action.

We have considered each of appellants' points of error and each is overruled.

Accordingly, the judgment of the trial court is affirmed.